**Charles Edward BAMFORD and Clifford J. Ott**

**v.**

**Raymond L. HOBBS, Individually and d/b/a Hobbs-Bannerman Corporation, et al.**

**Civ. A. No. H–82–1801.**

United States District Court,
S.D. Texas,
Houston Division.

Feb. 18, 1983.

salaries of $50,000.00 and $40,000.00, respectively, plus options to purchase up to twenty-five percent (25%) of the common stock issued by Hobbs-Bannerman Corporation at a price of twenty-five percent (25%) of the amount of the initial capital investment supplied by the corporation to the Houston operation. The purposes for opening the office in Houston were to facilitate the handling of the engineering and design work on a project in Wichita, Kansas and to attract new clients. Plaintiffs duly opened the Houston office. Several months later, it was closed by Hobbs-Bannerman, and all business ceased.

John C. Allen, Houston, Tex., for plaintiffs.

Don A. Wetzel, Sullivan, Bailey, King & Sabom, Houston, Tex., for defendants.

### MEMORANDUM AND ORDER

SINGLETON, Chief Judge.

### I. BACKGROUND

Plaintiffs Charles Edward Bamford and Clifford J. Ott sue defendants Raymond L. Hobbs, Hobbs-Bannerman Corporation, and Hobbs-Hood, Joint Venture for breach of contract, antitrust violations, tortious interference with contract, and malicious damage to property. This action is filed under 28 U.S.C. § 1332; sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2; and sections 2 and 4 of the Clayton Act, 15 U.S.C. §§ 13, 15. In their original complaint, plaintiffs sought injunctive relief as well as damages at law: an application for a temporary restraining order was denied by this court on June 30, 1982.

This dispute arises out of an agreement between Messrs. Ott and Bamford, who are Texas domiciliaries, and Hobbs-Bannerman Corporation, a California concern, which is in the business of furnishing engineering and design services to utility companies throughout these United States. The agreement provided that plaintiffs would open an office on behalf of Hobbs-Bannerman Corporation in Houston, in return for which, Ott and Bamford were to receive

Messrs. Ott and Bamford allege that, in connection with the closure of the Houston business, defendants have totally defaulted on their contractual responsibilities, have attempted to illegally monopolize the engineering and design business in the Houston market area, and have slandered plaintiffs' professional abilities. Defendants advance a different view of what transpired. In an affidavit, Mr. Raymond L. Hobbs, president of Hobbs-Bannerman Corporation, states that it was plaintiffs' own incompetency and inability to live up to the terms of the contract that forced the termination of the Houston office.

Presently before the court are defendants' alternative motions to dismiss, to quash return of service of process, or to change venue. Defendants offer several grounds for dismissal: (1) lack of in personam jurisdiction, (2) insufficiency of service of process, and (3) improper venue.

### II. THE SERVICE OF PROCESS ISSUE

Defendants contend that process was improperly served in this action in that it was not served in accordance with the provisions of article 2031b of the Texas Revised Civil Statutes, the Texas long-arm statute; rule 10(B) of the Local Rules of the Southern Districts of Texas; nor rules 4(e) and 4(f) of the Federal Rules of Civil Procedure. Plaintiffs counter that service was properly effected, in compliance with rule 4(d) of the Federal Rules of Civil Procedure and local

rule 10(B)(2)(b), when a copy of the complaint and a summons was sent via certified mail to each defendant.

■ In antitrust actions, a federal statute provides for nationwide service of process.[1] Section 12 of the Clayton Act, 15 U.S.C. § 22 authorizes service in any district of which the corporate defendant is an inhabitant, may be found, or transacts business. *Black v. Acme Markets, Inc.,* 564 F.2d 681, 684 (5th Cir.1977). Although in this case there is both federal question and diversity jurisdiction, plaintiffs need observe federal not state requirements. *See Terry v. Raymond International, Inc.,* 658 F.2d 398, 402 (5th Cir.1981).[2]

■ Rule 4(e) of the Federal Rules of Civil Procedure provides for service upon nonresidents. According to this rule, when there is a federal statute providing for service, but not supplying a method for it, "service may be made ... in a manner stated in this rule ...," i.e. rule 4. Therefore, plaintiffs' lack of compliance with the requirements of the Texas long-arm statute for service on corporate defendants is irrelevant: the pertinent inquiry is whether process was served on Hobbs-Bannerman Corporation and Hobbs-Hood, Joint Venture in accordance with rule 4. Rule 4(d)(3) details the manner in which service is to be effectuated upon foreign corporations. Personal delivery of a copy of the summons and complaint by a United States marshall or by registered or certified mail will suffice. Fed.R.Civ.P. 4(c), 4(d)(3), 4(f); *Black v. Acme Markets, Inc.,* 564 F.2d 681, 684 (5th Cir.1977).

■ In this case, a copy of the complaint and summons was sent via certified mail to each corporate defendant, addressed to Raymond L. Hobbs, who was authorized to receive process on their behalf. This satisfies the requirements of rule 4. Therefore, Hobbs-Bannerman Corporation and Hobbs-Hood, Joint Venture were properly served.

■ Because the Clayton Act does not provide for service of process on individuals, the propriety of service of process on Mr. Hobbs must be gauged by the requirements of the applicable Texas long-arm statute or rule; not by rule 4. *See* Fed.R.Civ.P. 4(e).[3] Rule 108 of the Texas Rules of Civil Procedure authorizes personal delivery on a nonresident defendant or delivery by registered or certified mail restricted to addressee only. The record shows that defendant Raymond L. Hobbs was served in accordance with rule 108, and this court concludes that service of process was properly perfected not only on Mr. Hobbs, but on all three defendants.

### III. THE PERSONAL JURISDICTION ISSUE

#### A. The Corporate Defendants

Alluding to the doctrine of *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the parties disagree as to whether defendants had the requisite contacts with the State of Texas to satisfy due process. Their simple disagreement is complicated by the fact that in an antitrust action, Congress permits nationwide service of process on corporate defendants. A recent fifth circuit opinion has held that when nationwide-service is authorized, the district court's jurisdiction is not circumscribed by the perimeters of the state in which it sits, and that the only "minimum contacts" required by due process are contacts with the United States, not the forum state. *Federal Trade Commission v. Jim*

---

**1.** It appears from the pleadings that neither plaintiffs or defendants apprehended this fact and thus framed their arguments as if the Texas long-arm statute was needed to effect service.

**2.** This assertion must be qualified in light of *Burstein v. State Bar of California,* 693 F.2d 511 (5th Cir.1982), which holds that in certain instances state law must be followed even

when jurisdiction exists under 28 U.S.C. § 1331. See notes 9 and 10 and accompanying text, *infra.*

**3.** Fed.R.Civ.P. 4(e) provides that when there is no federal statute authorizing service of process, service is to be made in accordance with the manner prescribed by the forum state's law.

*Walter Corp.,* 651 F.2d 251, 255–57 (5th Cir.1981).

In *Jim Walter Corp.* the court viewed due process limitations on personal jurisdiction as part of the concept of sovereignty and reasoned that the *International Shoe* doctrine defines the "limits on the exercise of the sovereign function...." *Id.* at 256. Consequently, the court decided, since the federal court exercises the "Judicial Power of the United States, ... due process requires only that a defendant in a federal suit have minimum contacts with the United States, 'the sovereign that created the court.'" *Id.* at 256 (citations omitted).

A recent Supreme Court case appears to seriously undermine the rationale of *Jim Walter Corp.* In *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), the Court, in no uncertain terms, rejected sovereignty as the basis for fourteenth amendment limitations on personal jurisdiction. It stated: "The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Id.* at 702, 102 S.Ct. at 2104 (citations omitted). Although *Jim Walter Corp.* implicated the fifth amendment, while the fourteenth amendment was at issue in *Insurance Corp. of Ireland,* this difference will not allow a clash between the two holdings to be averted. In *Jim Walter Corp.,* there was no distinction made between the conceptual underpinnings of the two amendments; the court simply and logically borrowed the method of analysis used in a state law case and applied it to the federal question case before it.[4] The message to be gleaned from this is that the same concept of limitation on sovereignty underlies restrictions on in personam jurisdiction under both the fifth and fourteenth amendments; only the sovereign entities differ. *See Burstein v. State Bar of Cali-*

*fornia,* 693 F.2d 511, 515–16 n. 8. (5th Cir. 1982).

In view of the irreconcilability of the two opinions, the precedential value of *Jim Walter Corp.* has been eroded. This leaves the vexing issue of personal jurisdiction and nationwide service of process still open in this circuit. Consequently, this court must determine on its own whether the result, if not the rationale, of *Jim Walter Corp.* can be saved.

The validity of the national contacts approach is contingent on both statutory and constitutional authority. *See Black v. Acme Markets, Inc.,* 564 F.2d 681, 684 (5th Cir.1977). In this case, Section 12 of the Clayton Act provides the necessary statutory underpinning. See *id; Hilgeman v. National Insurance Co. of America,* 547 F.2d 298, 301 (5th Cir.1977); *cf. DeJames v. Magnificence Carriers, Inc.,* 491 F.Supp. 1276, 1282–83 (D.N.J.1980), *affd.* 654 F.2d 280 (3d Cir.1981) (accepting the national contacts test on principle, but holding it inapplicable in an admiralty action in which there is no federal statute permitting nationwide service of process.) Constitutional authority, however, is more problematic. Most courts have decided that fifth amendment due process requires minimum contacts with the nation as a whole. *Stafford v. Briggs,* 444 U.S. 527, 554, 100 S.Ct. 774, 789, 63 L.Ed.2d 1 (1980) (Stewart, J. dissenting); Hovenkamp, *Personal Jurisdiction and Venue in Private Antitrust Actions in the Federal Courts: A Policy Analysis,* 67 Iowa L.Rev. 485, 501 (1982). To the extent that this decision rested on the same analysis employed in *Jim Walter Corp.,*[5] it, too, has been cast in doubt by *Insurance Corp. of Ireland.* This court must thus determine on its own the fifth amendment due process limits on the personal jurisdiction.

▮ The fourteenth amendment standards of *International Shoe* and its progeny may be applied to the fifth amendment,

---

**4.** The court in *Jim Walter Corp.* relied on *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980), which analyzed the relationship of fourteenth amendment due process and personal

jurisdiction primarily as a limitation on state sovereignty.

**5.** See note 4 and accompanying text, *supra.*

*Federal Trade Commission v. Jim Walter Corp.,* 651 F.2d 251, 255–56 (5th Cir.1981); *Black v. Acme Markets, Inc.,* 564 F.2d 681, 686 n. 8 (5th Cir.1977); *contra Oxford First Corp. v. PNC Liquidating Corp.,* 372 F.Supp. 191, 198–205 (E.D.Pa.1974); or at least used as guidelines. *See Lapeyrouse v. Texaco, Inc.,* 693 F.2d 581, 586 (5th Cir. 1982). In *International Shoe's* latest descendant, *Insurance Corp. of Ireland,* the test articulated is that, "The maintenance of the suit ... not offend traditional notions of fair play and substantial justice." *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982), (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The rejection of sovereignty as a basis for in personam jurisdiction by the Supreme Court in *Insurance Corp. of Ireland,* means there is no compelling reason for this court to observe sovereign boundaries and equate "fair play and substantial justice" with minimum contacts with the United States.[6] Whether it is fair and substantially just for a court to exercise jurisdiction over a particular defendant when nationwide service of process is permitted should be decided on a different basis. Factors to be considered include, the burden imposed on defendant if obliged to litigate in a distant forum, the plaintiff's interest in obtaining convenient and effective relief, the forum's interest in adjudicating the dispute, and the judicial system's interest in obtaining the most effective resolution of controversies. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–93, 100 S.Ct. 559, 563–65, 62 L.Ed.2d 490 (1980). Also to be considered is whether the defendant's business is local in character rather than national or regional, *Oxford First Corp. v. PNC Liquidating Corp.,* 372 F.Supp. 191, 203 (E.D.Pa.1974). The nature of the business bears on defendant's expectation of being required to litigate in a distant forum. *See Mississippi Interstate Express, Inc. v. Transpo, Inc.,* 681 F.2d 1003, 1006 (5th Cir.1982). For instance, it would be unfair for a defendant who does business solely in California to be answerable to suit in Texas. Yet, it might not be unfair if that defendant's commercial activities extend throughout the southwest or nation, even though not purposefully to Texas.[7]

▪▪▪ In this case, it is clear from the record that Hobbs-Bannerman had sufficient contacts with Texas to render it amenable to suit in this court within the limits of the fifth amendment.[8] Hobbs-Bannerman Corporation contracted with plaintiffs to open and operate a branch office in this

---

**6.** The holding of *Insurance Corp. of Ireland* does not change the necessity for "minimum contacts" with the forum state. Such a limitation is, however, an incidental restriction of state sovereignty, which serves to protect the individual liberty interest. The "minimum contacts" requirement is merely a way to establish whether the "fair play and substantial justice standard is satisfied." *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 2105 n. 10, 72 L.Ed.2d 492 (1982).

**7.** Implicit in the fifth amendment due process clause is a requirement that a defendant be treated fairly under the circumstances. *See Texas Trading and Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 315–16 n. 37 (2d Cir.1981); *DeJames v. Magnificence Carriers, Inc.,* 491 F.Supp. 1276, 1284 (D.N.J.1980), aff'd. 654 F.2d 280 (3d Cir.1981); Hovenkamp, Personal Jurisdiction and Venue in Private Antitrust Actions in The Federal Courts: A Policy Analysis, 67 Iowa L.Rev. 485, 503 (1982). This suggests that a defendant's individual liberty may be respected even without resort to the methodology of borrowing the "fair play and substantial justice test from the fourteenth amendment".

**8.** Even if defendants' amenability to suit in this court were to be evaluated in terms of the fourteenth rather than the fifth amendment standards, it is clear that Hobbs' nexus with Texas is such that this court could exercise in personam jurisdiction over him.

This court also notes that defendants' argument that, because Hobbs-Bannerman Corp. had ceased all activity in Texas prior to the date suit was filed, jurisdiction cannot be asserted over them, to be untenable. Under fifth amendment analysis it is irrelevant. Under fourteenth, it is well settled that a court may assert jurisdiction over a nonresident corporation which has withdrawn with regard to claims arising in the state. *Gutierrez v. Raymond International, Inc.,* 484 F.Supp. 241 (S.D. Tex.1979).

state; Ott and Bamford were merely agents and employees in defendant's venture to set up an on-going business in Houston. Hobbs-Bannerman Corporation's connection with this state was such that it could reasonably foresee being obliged to defend in this court, especially since the lawsuit arises out of defendant's contacts with Texas.

In the case of Hobbs-Hood, Joint Venture, plaintiffs have not established that, under fifth amendment due process limitations, Hobbs-Hood, Joint Venture is susceptible to the jurisdiction of this court. However, this court will defer a decision on this point until plaintiffs have engaged in further discovery. Plaintiffs are to frame their jurisdictional facts and allegations in terms of the test and factors discussed in this Memorandum and Order.

### B. The Individual Defendant

The Clayton Act does not provide for service of process on noncorporate defendants. Consequently, an analysis different from that used to determine whether personal jurisdiction exists as to Hobbs-Bannerman Corporation & Hobbs-Hood, Joint Venture must be used to calculate the reach of judicial power over Mr. Hobbs.

**9.** The court in *Burstein* did not address the issue of nationwide service of process and national contacts, since in *Burstein* state law was found to control the defendants' amenability to jurisdiction.

**10.** Rule 4(e) states that when a federal statute provides both service of process and the means to accomplish it, or when a statute of the forum state provides for service of process, service may be made "under the circumstances and in the manner prescribed in the statute. The rule also says that when a federal statute provides for service, but not the means to carry this out "service may be made ... in a manner stated in this rule."

The court in *Burstein* arrived at its holding by seizing on the presence of the phrase "under the circumstances" in the second sentence of the rule. To give effect to its terms, the court concluded, rule 4(e) must be interpreted to require state law to govern susceptibility to jurisdiction when jurisdiction is asserted under state statute.

**11.** The court in *Lapeyrouse* did not construe the language of rule 4(e) and, consequently,

It is clear that in this action the manner of service is prescribed by Texas, not federal law; but whether federal or state law should dictate Mr. Hobbs' amenability to suit in this court is, at the moment, a matter of controversy within the fifth circuit itself. Two recent opinions have come down on opposite sides of the issue. In *Burstein v. State Bar of California,* 693 F.2d 511 (5th Cir.1982), the court closely analyzed the language of rule 4(e) of the Federal Rules of Civil Procedure and, based on its exegesis, concluded that the clear import of the rule is that federal standards apply when a statute of the United States provides for service of process,[9] but state standards apply, even in a federal question case, when assertion of jurisdiction depends on a state statute. Stated otherwise: "[When] assertion of jurisdiction and not just the service of process depends on the state statute ... a federal court, even in a federal question case, can use a state long-arm statute only to reach those parties whom a court of the state could also reach under it."[10] *Id.* at 514. Less than one week after *Burstein,* the fifth circuit handed down *Lapeyrouse v. Texaco, Inc.,* 693 F.2d 581 (5th Cir.1982), in which it was decided that in a federal question case, a federal standard alone governs amenability to jurisdiction. *Id.* at 585.[11] In *Lapeyrouse*

was not concerned with the distinction made in *Burstein* between reliance on federal as opposed to state law for service of process. Instead, it rested its holding on the traditional tests for determining personal jurisdiction: "(1) assertion of jurisdiction by the law of the forum; (2) conformity of the law with the Constitution; and (3) authority for the means of service of process." *Lapeyrouse v. Texaco, Inc.,* 693 F.2d 581, 584 (5th Cir.1981). It, then dealt with the first test by concluding that, when subject-matter jurisdiction rests on federal law, assertion of personal jurisdiction is also governed by federal law. *Id.* at 584.

The *Lapeyrouse* court noted that, in a federal question case, the relevant inquiry lies with fifth amendment due process. After stating that different interests are involved when a federal, rather than state, forum is seeking to exercise jurisdiction. For instance, the concern for limits on state sovereignty are absent. The court, nevertheless, without discussion, borrowed the *International Shoe* doctrine and proceeded to measure defendant's minimum contacts with the forum state rather than the na-

the court said, "[T]he otherwise-threshold inquiry of whether the state-long-arm statute asserts jurisdiction over the defendant sought to be joined in a suit, is irrelevant 'where the power of the federal court can be independently sustained on the ground that the matter in controversy arises under the Constitution, laws or treaties of the United States.'" *Id.* at 585 (quoting *Lone Star Package Car Co. v. Baltimore & O.R. Co.*, 212 F.2d 147, 153–54 (5th Cir.1954)).

■ The previous discussion illustrates the lack of guidance presently being given on this issue by the fifth circuit. The only point of consensus in the circuit is that in a federal question case, fifth amendment due process and not fourteenth controls. Thus, this court is faced with two valid precedents and must decide which one it wants to follow.

■ After careful consideration of both Supreme Court pronouncements on *in personam* jurisdiction and fifth circuit case law, this court is persuaded by *Burstein's* statutory interpretation of rule 4(e) and its revelation of Congressional intent. Therefore, in the case at bar, state standards will be applied to determine if Mr. Hobbs may be sued in this jurisdiction.

■ With the recent Texas Supreme Court decision in *Hall v. Helicopteros Nacionales De Columbia, S.A.*, 638 S.W.2d 870 (Tex.1982), the reach of the Texas long-arm statute is as far as fourteenth amendment due process will allow. *Placid Investments, Ltd. v. Girard Trust Bank*, 689 F.2d 1218, 1219 (5th Cir.1982). Due process requires that Mr. Hobbs have a sufficient nexus with Texas before this court may obtain jurisdiction over him. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Great*

*Western United Corp. v. Kidwell*, 577 F.2d 1256, 1266 (5th Cir.1978).

■ The rule in this circuit is that personal jurisdiction may be asserted over a nonresident defendant when that defendant has taken "purposeful and affirmative action which foreseeably causes business activity in the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1007 (5th Cir.1982). By taking such purposeful action, a defendant is deemed to have availed himself of the benefits and protection of the forum's laws, and maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice. *Id.; Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir.1981).[12]

■ In the case of Mr. Hobbs, in order to assert jurisdiction over him, it is necessary to show that he took "purposeful and affirmative" action on his own behalf and not as a corporate officer, or that he had a relationship with either corporate defendant that justifies imputing their susceptibility to suit in this court to him.

■ Corporate boundaries are generally respected by the courts. If a corporate officer's only contact with the forum is through performance of his official duties, he is not, as a consequence therefrom, subject to personal jurisdiction in that forum. *See Forsythe v. Overmyer*, 576 F.2d 779, 783 (9th Cir.) *cert. denied* 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978); *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.*, 519 F.2d 634, 637 (8th Cir.1975). An individual may have his corporation's contacts with the forum attributed to him only if there is an alter ego relationship between the two that justifies a court in disregarding the separate

---

tion. See id. at 586. In doing so, the Lapeyrouse court ignored *Federal Trade Commission v. Jim Walker Corp.*, 651 F.2d 251 (5th Cir. 1981) in which it was stated, "Because the district court's jurisdiction is always potentially ... co-extensive with the boundaries of the United States, due process requires only that a defendant in a federal suit have minimum contacts with the United States." Id. at 256.

**12.** The *Burstein* court suggests that in the aftermath of *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 there is now a single test to determine amenability to personal jurisdiction, and this test is that exercise of jurisdiction not offend "traditional notions of fair play and substantial justice." *Burstein v. State Bar of California*, 693 F.2d 511, 519 n. 12 (5th Cir.1981).

corporate entity. *See Lakota Girl Scout Council, Inc.,* 519 F.2d at 638.

■ In this case, plaintiffs must show that Mr. Hobbs acted as an individual rather than as a corporate officer, or that Mr. Hobbs and either Hobbs-Bannerman Corporation or Hobbs-Hood, Joint Venture are, in reality, alter egos, before this court may assert jurisdiction over him. At this point plaintiffs have not sustained this burden. The fact that Mr. Hobbs personally negotiated the terms of the contract that is in dispute here, or that Mr. Hobbs has travelled to Texas to participate in transactions of the local office are not, in and of themselves, dispositive of the jurisdictional issue. However, this court is of the opinion that after further discovery, there is the possibility that plaintiffs may be able to show that the exercise of personal jurisdiction over Mr. Hobbs is justified and a ruling on this question will be deferred.

Plaintiffs advance the coconspirator doctrine as an alternative avenue for bringing defendants Hobbs-Hood, Joint Venture and Raymond L. Hobbs within the jurisdiction of the court. Messrs. Bamford and Ott maintain that Mr. Hobbs, Hobbs-Bannerman Corporation, and Hobbs-Hood, Joint Venture engaged in a conspiracy to adversely effect plaintiffs' professional position in the Houston area. Because of this conspiracy, they argue, one defendant's susceptibility to the jurisdiction of this court, may be imputed to the others.

■ Preliminarily, this court notes that the coconspirator theory, in and of itself, will not serve to pierce Mr. Hobbs' corporate protection. In any case, this theory is disfavored by the courts, and no court has conferred jurisdiction over an alleged conspirator merely because jurisdiction exists as to a fellow alleged conspirator. *See* 4 Wright and Miller, Federal Practice and Procedure § 1069, at 52 (Supp.1981). However, some courts have followed a modified coconspirator doctrine and have held that jurisdiction may be exercised over an absent defendant when an agency relationship among conspirators has been found, when the conspiracy would have a foreseeable impact in the forum state, or when parts of the conspiracy were carried out in the forum state. *See Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1341 (2nd Cir.1972); *National Van Lines, Inc. v. Atlas Van Lines, Inc.,* 406 F.Supp. 1087, 1089 (N.D.Ill.1975); *Mandelkorn v. Patrick,* 359 F.Supp. 692, 695–96 (D.D.C. 1973). Yet, in all these cases, it appears as if reliance on the coconspirator doctrine was unnecessary, the court could have asserted jurisdiction over the absent defendant on the basis of that defendant's own minimum contacts with the forum state. Consequently, this court declines to apply the coconspiracy doctrine and instead will judge whether personal jurisdiction exists on the basis of each defendant's own activities.

## V. THE VENUE ISSUE

Defendants contend that venue is improperly laid in this district and, pursuant to 28 U.S.C. § 1404(a), move for dismissal or transfer of this lawsuit to the Southern District of California, Los Angeles Division.

Section 12 of the Clayton Act, 15 U.S.C. § 22 permits an antitrust action to be brought in any judicial district where the corporation is an inhabitant, is found, or transacts business. The general venue statute, 28 U.S.C. § 1391(b) permits civil actions not based solely on diversity of citizenship to be brought "only in the judicial district where all the defendants reside, or in which the claim arose, except as otherwise provided by law." This last phrase of section 1391(b) brings into question the relationship between the general and special venue statutes e.g. section 12 of the Clayton Act. In the past, there has been some division of opinion as to whether the special venue statutes are to be interpreted as supplementing or superseding section 1391(b). Since the Supreme Court opinion of *Pure Oil Co. v. Suarez,* 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966), in which it was held that the general venue statutes supplemented the special venue provisions contained in the Jones Act, a trend has emerged among the district courts to consider section 1391(b) and the special anti-

trust venue statute as supplementary. *First Pullen Commodity v. A.G. Becker-Kipnis,* 507 F.Supp. 770, 772 (S.D.Florida, N.D.1981); *see e.g. Board of County Commissioners v. Wilshire Oil Co. of Texas,* 523 F.2d 125, 129–30 (10th Cir.1975); *California Clippers, Inc. v. United States Soccer Football Assoc.,* 314 F.Supp. 1057, 1062 (N.D.Cal. 1970); *Albert Levine Associates v. Bertoni and Cotti,* 314 F.Supp. 169 (S.D.N.Y.1970). The effect of considering section 1391(b) in conjunction with 15 U.S.C. § 22 is to confer venue in antitrust cases where the claim arose, even though such language is absent from section 22. This has been deemed to be a proper result by the majority of courts. Only by expanding the opportunities for venue, can the needs of plaintiffs in antitrust litigation for a convenient forum be met. *See First Pullen Commodity v. A.G. Becker-Kipnis,* 507 F.Supp. at 772–73.

■ This court, will follow the majority position and hold that section 12 of the Clayton Act supplements, rather than supersedes, the provisions of the general venue statute. This court must, thus, ascertain whether, under the facts of this case, venue is proper in this district.

■ In determining where the claim arose, the aggregate of the parties actions must be examined. In this case, it is clear that the preponderance of significant activity took place in Houston. In fact, the only important events to take place in another location were the negotiation and signing of the agreement in California. The agreement provided that business operations were to be conducted in Houston. Performance of the contract took place in Houston, as did the alleged default by defendants. The target of the alleged antitrust activity was the Houston area. The other alleged tortious actions also took place here. By number and significance of the parties activities, Houston has a closer connection with this lawsuit than does Los Angeles. In addition, since all of the alleged illegal conduct on the part of defendants centered on Houston, it can be said that the claim arose here within the meaning of section 1391(b). Consequently, this court holds that venue is proper in this district.

Accordingly, it is ORDERED, ADJUDGED, and DECREED that defendants' motion to dismiss or quash for improper service of process, defendants' motion to dismiss for lack of in personam jurisdiction as to Hobbs-Bannerman Corporation, and defendants' motion to dismiss or change venue because of improper venue be, and the same are, DENIED. It is also ORDERED, ADJUDGED, and DECREED that defendants' motion to dismiss for lack of in personam jurisdiction as to Hobbs-Hood, Joint Venture and Raymond L. Hobbs be, and the same is, DEFERRED.