**GRM, et al., Plaintiffs,**

v.

**EQUINE INVESTMENT AND MANAGEMENT GROUP, et al., Defendants.**

**Civ. A. No. 83–5951.**

United States District Court, S.D. Texas, Houston Division.

Oct. 23, 1984.

J. Eugene Clements, Porter & Clements, Houston, Tex., for plaintiffs.

D. Bobbitt Noel, Jr., Vinson & Elkins, Houston, Tex., Joan Gaughan Devlin, Pittsburgh, Pa., Jesse S. Faerber, Fenster & Faerber, Plantation, Fla., Richard A. Gumpert, Bracewell & Patterson, Percy Foreman, James R. Leahy, Reynolds, Allen & Cook, Daniel R. Kirshbaum, Axelrod, Smith, Komiss & Kirshbaum, Houston, Tex., Jay J. Madrid, Winstead, McGuire, Sechrest & Minick, Michael P. Lynn, Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., Michael Wilson, Richard Frankel, Miller, Keeton & Bristow, Houston, Tex., Asher Fensterheim, Fensterheim & Fensterheim, Paul R. Grand, Grand & Ostrow, New York City, Graham Kerin Blair, Boyar, Norton & Blair, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

SINGLETON, Chief Judge.

This action arises out of plaintiffs' investment in a Florida limited partnership entitled The Arabian Breeding Program I. Plaintiffs allege that defendants committed various fraudulent acts in connection with that partnership's offering which violated federal and Texas laws.

Plaintiffs GRM and B–C Investments are Texas general partnerships comprised of Houston residents. Plaintiff Frederick M. Otto is an individual residing in Houston.[1] Defendant Andover Funding Limited is a South Dakota general partnership with a Delaware corporation as its corporate general partner. Defendant Andover Financial Corporation is a Maine corporation with its principle place of business in Connecticut.[2] Andover Funding Ltd. and Andover Financial Corporation jointly filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. In support they

---

**1.** Plaintiffs' First Amended Complaint ("Complaint"), ¶ 3.

**2.** Affidavit for the Andover defendants of Anthony J. Marchese ("Affidavit"), ¶ 3.

argue: (1) The Texas long-arm statute does not provide this court personal jurisdiction, (2) Title 15 U.S.C. § 78aa does not provide this court personal jurisdiction, and (3) asserting personal jurisdiction under Section 78aa would violate the Fifth Amendment of the United States Constitution.

Having considered the relevant facts and law, this court determines that the Andover defendants' motion should be denied.

## I. APPLICABLE JURISDICTIONAL STATUTE

■ The Andover defendants first argue that the Texas long-arm statute, Tex.Rev. Civ.Stat. Art. 2031b, does not give this court personal jurisdiction since the Andover defendants lack the systematic business in or minimum jurisdictional contacts with Texas required by the statute and United States Constitution. That argument is irrelevant since the Texas long-arm statute does not here apply.

Plaintiffs allege the Andover defendants violated the 1933 Securities Act ("1933 Act"), the 1934 Securities Exchange Act ("1934 Act"), and various Texas laws. The jurisdiction and venue provision of the 1934 Act, 15 U.S.C. § 78aa, obviously governs this court's personal jurisdiction as to the 1934 Act claims. That provision also governs actions under the 1933 Act when, as here, a plaintiff joins 1933 Act and 1934 Act claims in one suit. *Hilgeman v. National Ins. Co. of America*, 547 F.2d 298, 301 n. 7 and cases cited therein (5th Cir. 1977). That 1934 Act provision likewise governs this court's personal jurisdiction as to plaintiffs' pendent Texas law claims. *E.g., Emerson v. Falcon Mfg.*, 333 F.Supp. 888, 890 (S.D.Tex.1971); *Pioneer Properties v. Martin*, 557 F.Supp. 1354, 1361 (D.Kan.1983); *Warren v. Bokum Resources Corp.*, 433 F.Supp. 1360, 1364–65 (D.N.M.1977); 4 Wright & Miller, Federal Practice and Procedure, Civil § 1125 at

527–29 (1969). Since neither the 1933 Act nor the Texas long-arm statute apply, this court's decision must rest solely upon statutory and constitutional analysis of the personal jurisdiction provided by the 1934 Act.

## II. STATUTORY JURISDICTION

The Andover defendants next assert that the 1934 Act provides no statutory basis for this court to exercise personal jurisdiction since the Andover defendants' alleged violations occurred outside Texas and they are not transacting business in, inhabiting, or found in Texas.

Section 27 of the 1934 Act establishes both personal jurisdiction and venue in any district

 (1) where the defendant transacts business, inhabits, or is found; or

 (2) where "any act or transaction constituting the violation occurred."

15 U.S.C. § 78aa. Plaintiffs expressly disavow any claim that the Andover defendants "transact business" in the Southern District of Texas.[3] And they do not allege that the Andover defendants are found in or inhabit this district.[4] Personal jurisdiction must therefore rest upon some violation having occurred in this district.

■ The Andover defendants discuss at length their claim that all the acts constituting *their* alleged violations occurred not in Texas, but in New York, Connecticut, and Florida.[5] That myopic fixation on the Andover defendants' acts alone ignores the crucial point that Section 78aa vests jurisdiction in every district where *any* material act occurred in consumation of this allegedly fraudulent limited partnership offering. *Hilgeman*, 547 F.2d at 301–302; *Hooper v. Mountain States Securities Corp.*, 282 F.2d 195, 205 (5th Cir.1960), *cert. denied* 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961). If an act or transaction of any one codefendant in a common securities fraud

---

**3.** Plaintiffs' brief in support of their response to defendants Andover Funding, Ltd. and Andover Financial Corp.'s motion to dismiss ("Plaintiffs' Brief"), page 4.

**4.** *See* Complaint ¶¶ 13, 14.

**5.** Brief in support of motion to dismiss pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure ("Defendants' Brief"), pages 13–19.

scheme satisfies Section 78aa, then personal jurisdiction and venue are proper as to all other codefendants "even in the absence of any contact or substantial contact" by those other codefendants in the forum district. *Hilgeman,* 547 F.2d at 302 n. 12 and cases cited therein (5th Cir.1977); *accord Clement v. Pehar,* 575 F.Supp. 436, 442 n. 4 (N.D.Ga.1983); *Rose v. Arkansas Valley Environmental & Utility Authority,* 562 F.Supp. 1180, 1211–12 and cases cited therein (W.D.Mo.1983); *Carty v. Health-Chem Corp.,* 567 F.Supp. 1, 3 (E.D.Pa. 1982). For example, the securities fraud plaintiff in *Hooper* filed suit in the Middle District of Alabama against codefendants from Colorado, New York, Pennsylvania, and Texas. The Fifth Circuit held Section 78aa was satisfied as to all codefendants based on one long-distance phone call the Texas defendant had made into Alabama. *Hooper,* 282 F.2d 203–05. *See also Rose,* 562 F.Supp. at 1211–13 (particular defendant's neither performing acts within the forum state nor knowing of other codefendants' in-state acts may affect his liability, but is immaterial for the purposes of Section 78aa).

■ The requisite "act or transaction" by one codefendant in the forum district need not be an act crucial to the fraud. *Hilgeman,* 547 F.2d at 301; *Hooper,* 282 F.2d at 204. The act need only be "of material importance to the consumation of the scheme." *Hilgeman,* 547 F.2d at 301; *Hooper,* 282 F.2d at 204–05. Courts have generally interpreted this test to require some action by a codefendant that "reaches into" the forum district to obtain investors.

*Clement,* 575 F.Supp. at 441 and cases cited therein.

■ Plaintiffs here allege a common securities fraud scheme perpetrated by the Andover and other defendants.[6] The Complaint further alleges that plaintiffs all reside in Houston, that the securities violations occurred in the Southern District of Texas, and that the partnership units were offered by a private placement memorandum and "numerous interstate telephone calls made by defendants to plaintiffs in the Southern District."[7] Liberally construing the Complaint in plaintiffs' favor and accepting all reasonable conclusions drawn therefrom as we must on a motion to dismiss[8], this court concludes that Andover's codefendants "reached into" and committed acts of material importance within this district. Since a sufficient "act or transaction constituting the violation" therefore occurred in this district, personal jurisdiction and venue as to the Andover defendants is proper under Section 78aa.

### III. CONSTITUTIONALITY OF JURISDICTION

#### A. The Proper Due Process Standard

Arguing that they lack the minimum contacts with Texas required by the Due Process Clause, the Andover defendants lastly contend that this court's asserting personal jurisdiction would violate the Fifth Amendment of the United States Constitution. Plaintiffs reply that when Congress authorizes nationwide service of process, any federal court can constitutionally exercise personal jurisdiction as long as the defendant has minimum contacts with the United

---

**6.** *See* Complaint ¶¶ 19–53.

**7.** Complaint ¶¶ 3, 2, 20.

**8.** That properly states the general standard for this court's treatment of dismissal motions. 5 Wright & Miller, Federal Practice and Procedure, Civil § 1357 (1969). More specifically in this particular context, this court notes that plaintiffs bear the burden of establishing this court's personal jurisdiction over the Andover defendants. But since this court disposes of defendants' motion upon the basis of the pleadings and defendants' affidavit rather than upon any evidenciary hearing, plaintiffs meet their

burden if they present a prima facia case for personal jurisdiction. *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1270–71 (5th Cir.1983). This court must take as true the allegations in plaintiffs' Complaint, except as controverted by the defendants' affidavit of Mr. Marchese. *Brown v. Flowers Industries, Inc.,* 688 F.2d 328, 332 (5th Cir.1982), *cert. denied* 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983). Finally, this court must resolve any conflicts between the Complaint and defendants' affidavit in favor of establishing personal jurisdiction. *Id.*

States as a whole. Since Section 78aa authorizes such nationwide service and the Andover defendants fail to deny United States residency, plaintiffs argue that this court's exercise of personal jurisdiction would not violate Due Process.

Most federal courts adopt plaintiffs' line of reasoning. *E.g., Stafford v. Briggs,* 444 U.S. 527, 554, 100 S.Ct. 774, 789, 63 L.Ed.2d 1 (Stewart & Brennan, J.J., dissenting) (majority did not reach the constitutional question) (1980); *Fitzsimmons v. Barton,* 589 F.2d 330, 333 (7th Cir.1979) (personal jurisdiction under Section 78aa); *Mariash v. Morrill,* 496 F.2d 1138, 1143 (2d Cir.1974) (personal jurisdiction under Section 78aa). Indeed a relatively recent Fifth Circuit decision concerning FTC subpoena enforcement actions, *FTC v. Jim Walter Corp.,* 651 F.2d 251 (5th Cir.1981), strongly supports plaintiffs' contention. Invoking the Due Process Clause as defendants do here, the Florida defendant in *Jim Walter* argued that the United States District Court for the Northern District of Texas could not assert personal jurisdiction since the defendant had no contacts with the forum district. *Id.* at 255. The Fifth Circuit nonetheless upheld the district court's exercise of personal jurisdiction given the FTC Act's implicit authorization of nationwide service of process and the defendant's contacts with the nation as a whole. *Id.* at 254–56.

The *Jim Walter* court reasoned that the minimum contacts requirement of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny

> arises out of the limitations inherent in concepts of sovereignty. In enacting and enforcing laws, each state exercises a sovereign function. This sovereignty may be exercised only over those who reside in the state and those who undertake activities within it. By determining when "a state may make binding a judgment in personum against an individual or corporate defendant," the doctrine establishes when a defendant may be fairly

thought to have submitted itself to that limited sovereignty.

> Properly understood as defining the limits on the exercise of the sovereign function, the doctrine's application to federal jurisdiction is unambiguous. Subject *only* to the regulation of Congress, each federal court exercises the "judicial Power of the United States," not a judicial power constitutionally limited by the boundaries of a particular district.... Because the district court's jurisdiction is ... co-extensive with the boundaries of the United States, due process requires only that a defendant in a federal suit have minimum contacts with the United States, "the sovereign that has created the court," ....

> When minimum contacts exist with the relevant sovereign, due process no longer protects a defendant from distant litigation because the location of permissible venues is a matter of sovereign prerogative....

> Defendant's true complaint is that it is more expensive and inconvenient to defend a suit in a distant forum, but Congress has no constitutional obligation to make litigation as inexpensive as possible. Moreover, if the ability of one litigant to impose inordinate expense on another violated due process, major segments of our system of civil litigation might be rendered unconstitutional, rather than merely distressing.

*Id.* at 256–257 (footnotes and citations omitted); *accord, Fitzsimmons,* 589 F.2d at 333–334; *Mariash,* 496 F.2d at 1143.

■ More recently, however, the United States Supreme Court unequivocally rejected sovereignty as the basis for the Due Process Clause's minimum contacts requirement and corresponding limitation of personal jurisdiction. In *Insurance Corp. of Ireland v. Compagnie Des Bauxites de Guinea,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982) (footnote omitted), the Court stated that "[t]he personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power

not as a matter of sovereignty, but as a matter of individual liberty." The minimum contacts requirement is therefore merely a method to establish whether or not the defendant's Due Process liberty interest in fundamental "fair play and substantial justice" is satisfied. *See id.* at 702–03 and n. 10, 102 S.Ct. at 2104–05 and n. 10. The Fifth Circuit has accordingly recognized that *Insurance Corp. of Ireland* may undermine the holding of *Jim Walter. Burstein v. State Bar of California,* 693 F.2d 511, 515–516 n. 8 (5th Cir. 1982); *see also DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1272 n. 16 (5th Cir. 1983). This particular court, moreover, has previously held that *Insurance Corp. of Ireland* precludes a mechanical application of *Jim Walter's* national-contacts test to an antitrust defendant served with nationwide process under Section 12 of the Clayton Act, 15 U.S.C. § 22. *Bamford v. Hobbs,* 569 F.Supp. 160, 164–166 (S.D.Tex.1983).[9]

The *Insurance Corp. of Ireland* Court held that the test for personal jurisdiction under the Due Process Clause is *solely* a requirement that "the maintenance of the suit ... not offend 'traditional notions of fair play and substantial justice'." 456 U.S. at 703, 102 S.Ct. at 2105. Thus in the Fourteenth Amendment context the Fifth Circuit has held that the standard for assessing the constitutionality of a district court's personal jurisdiction "must be simply 'traditional notions of fair play and substantial justice' with 'contacts' viewed as a way of demonstrating whether the standard is satisfied." *DeMelo,* 711 F.2d at 1270; *Burstein,* 693 F.2d at 517–18. *Insurance Corp. of Ireland* compels this court to apply that same standard in the Fifth Amendment context.

There is no impelling reason to equate traditional fair play and substantial justice to minimum contacts with the nation as a whole. *Bamford,* 569 F.Supp. at 166. Nor, in light of modern communication and transportation and Congress's express authorization of nationwide service, can fair play and substantial justice turn simply upon whether the Andover defendants must cross a state border to get to the Southern District of Texas. For as another district court once observed, a Portland, Maine defendant forced to litigate in Raleigh, North Carolina must cross twelve state borders, yet travels no farther than an El Paso, Texas defendant forced to litigate in Beaumont, Texas. *Oxford First Corp. v. PNC Liquidating Corp.,* 372 F.Supp. 191, 201 (E.D.Pa.1974).[10] Since the bounds of fairness do not necessarily run along state borders, the Fifth Amendment's Due Process Clause does not go so far as to require that the Andover defendants have minimum contacts with the State of Texas.

Even under the stricter state contacts analysis, determining whether a particular defendant has *sufficient* contacts is a highly fact bound inquiry which hinges upon the specific quality and nature of that defendant's contact with the forum state. *Burstein,* 693 F.2d at 520; *Mississippi In-*

9. This court recognizes that district courts in other circuits have continued to apply the "national-contacts" test to defendants' personal jurisdiction objections under Section 78aa. *E.g., Clement v. Pehar,* 575 F.Supp. 436, 438–39 (N.D.Ga.1983); *Taylor v. Bear Stearns & Co.,* 572 F.Supp. 667, 679–80 (N.D.Ga.1983); *Pioneer Properties Inc. v. Martin,* 557 F.Supp. 1354, 1358 n. 6 (D.Kan.1983). This court believes, however, that those decisions overlook the fundamental change that *Insurance Corp. of Ireland* made in the interests protected by Due Process minimum contacts analysis.

10. This court must explain its citation of *Oxford First Corp.* as authority. The primary thrust of that opinion was that the Due Process Clause

protected defendants not merely from overreaching limited sovereigns, but from unfairly burdensome distant litigation. The Fifth Circuit has rejected consideration of the defendant's litigation burdens in this context, see supra text at pages 313–314, and has thus expressly disapproved of *Oxford First Corp. Jim Walter,* 651 F.2d at 256 n. 9. On the other hand, the U.S. Supreme Court more recently rejected the sovereignty-based consideration and emphasized fairness alone instead. See supra text concerning *Insurance Corporation of Ireland* at pages 313–314. This court accordingly concludes that *Insurance Corp. of Ireland* breathes new life into the reasoning and authority of *Oxford First Corp.*

*terstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir.1982). By eschewing reliance upon contacts as a sovereignty limitation and instead defining personal jurisdiction "solely by reference to abstract notions of fair play," 456 U.S. at 714, 102 S.Ct. at 2110 (Powell, J., concurring), *Insurance Corp. of Ireland* does not offer any clearer guidelines to assist courts' introspection of their personal jurisdiction. Indeed, having here cut the Due Process test free of its national contacts anchor, *Insurance Corp. of Ireland* threatens to set district courts adrift when they embark upon that highly fact-bound analysis of whether asserting personal jurisdiction over a particular defendant joined by nationwide service of process satisfies the nebulous standard of "traditional notions of fair play and substantial justice."

 To set a benchmark, this court begins its analysis by noting that that Fifth Amendment Due Process standard requires the Andover defendants be treated fairly under the circumstances; that assertion of personal jurisdiction respects their liberty interests as recognized by *Insurance Corp. of Ireland. Bamford*, 569 F.Supp. at 166 n. 7. To this the Andover defendants argue that forcing them to litigate in Texas would not be fair, while plaintiffs of course rejoin that under the circumstances here it would be fair.[11] To determine which party is constitutionally correct, this court will consider the five non-sovereignty related factors which courts have traditionally employed when examining personal jurisdiction under the Due Process Clause[12]: (1) the burden imposed upon the defendants by Texas litigation, (2) defendants' reasonable expectations and the foreseeability of Texas litigation, (3) plaintiffs' interest in convenient and effective relief, (4) the federal judicial system's interest in efficiently resolving controversies, and (5)

Texas's interest in having a court in Texas adjudicate this dispute.

### B. Defendants' Burden

 Whether asserting personal jurisdiction is fair and substantially just turns in part upon the burden or inconvenience which distant litigation imposes upon the objecting defendant. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292–94, 100 S.Ct. 559, 564–66, 62 L.Ed.2d 490 (1980); *Burstein*, 693 F.2d at 521; *Bamford*, 569 F.Supp. at 166. The Andover defendants accordingly argue that they will "harshly feel" the "distances involved, the time required for employees to be away from the office, and the hardships inherent in litigating in a distant forum."[13] But since most of the burdens imposed by securities fraud litigation such as this revolve around discovery, this court's geographic location will not greatly affect the burdens imposed upon the Andover defendants. *See Oxford First Corp.*, 372 F.Supp. at 201–02. Moreover, if some of defendants' employees must eventually come to Houston for trial, the time they will be taken away from the office depends more upon the length of their testimony than upon this court's distant location. For regardless of whether trial is held 200 or 2000 miles from defendants' offices, their witness-employees would have to travel a few hours by plane. Even if the indirect burden of impositions upon a defendant's distant attorney is relevant, see *id.* at 203, that consideration does not weigh in defendants' favor here since they have employed Dallas and Houston counsel.[14] Finally, while a defendant's resources relative to the plaintiff's might influence the weight this court gives a defendant's burden, *see Mississippi Interstate Express*, 681 F.2d at 1010, the Andover defendants do not allege that their businesses' resources are less adequate than those of the

---

**11.** Defendants' Brief, page 22; Plaintiffs' Brief, page 8.

**12.** To this list could be added the relative equities and convenience between the parties. *See DeMelo*, 711 F.2d at 1270; *Brown*, 688 F.2d at 333; *Pioneer Properties Inc.*, 557 F.Supp. at 1361.

But that consideration merely encapsulates the five factors this court will evaluate.

**13.** Defendants' Brief, page 21.

**14.** *See* Defendants' Brief, page 27.

plaintiffs. In light of the above discussion, this court concludes that the burden which Texas litigation would impose upon the Andover defendants does not in itself render this court's assertion of personal jurisdiction sufficiently unfair or unjust to rise to the level of a Due Process violation.

This court must therefore examine whether the other four relevant factors bolster defendants' objection.

### C. Defendants' Reasonable Expectations

■ The second factor focuses upon whether a reasonable person in the defendant's place would expect her actions to result in distant forum litigation. *Burstein*, 693 F.2d at 521; *Bamford*, 569 F.Supp. at 166. As the United States Supreme Court explained in the Fourteenth Amendment context,

> the foreseeability that is critical to Due Process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*World-Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. at 567. The Due Process Clause thereby provides our legal system a degree of predictability allowing potential defendants to structure their primary conduct with some minimal assurances as to where that conduct will and will not render them liable to suit. *Id; Oswalt v. Scripto, Inc.*, 616 F.2d 191, 199 (5th Cir.1980).

The Fifth Circuit has therefore consistently held that assertion of personal jurisdiction does not violate traditional notions of fair play and substantial justice when the defendant's activity outside the state has a reasonably foreseeable consequence in the state. *E.g., DeMelo*, 711 F.2d at 1270; *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 333 (5th Cir.1982), *cert. denied* 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983). *Mississippi Interstate Express*, 681 F.2d at 1007. For example, in *Oswalt* the defendant manufacturer's only contact with the United States was that it annually sold three to four million cigarette lighters to an American company pursuant to an exclusive distributorship agreement. 616 F.2d at 196–98. The U.S. District Court for the Northern District of Texas dismissed the Texas plaintiffs' product liability action against that Japanese manufacturer on the grounds that asserting personal jurisdiction would violate the Due Process Clause. *Id.* at 198. The Fifth Circuit reversed, stating Due Process was satisfied since the defendant had reason to know or expect that one of its nationally distributed lighters would reach a Texas plaintiff. *Id.* The Andover defendants had more than mere reason to expect that their out-of-state conduct might affect some Texas resident. Since they reviewed and discussed plaintiffs' initial loan applications,[15] the Andover defendants actually knew that their conduct affected these particular Texas plaintiffs.

■ The nature of a defendant's business also bears on whether he could reasonably expect litigation in a distant forum. *Bamford*, 569 F.Supp. at 166. A defendant can more reasonably expect distant litigation if its business is of a national or regional character rather than purely local. *Id.; Mississippi Interstate Express*, 681 F.2d at 1010 (California defendant's national business makes it more reasonable for it to expect distant forum litigation); *compare Barnstone v. Congregation Am Echad*, 574 F.2d 286, 289 (5th Cir.1978) (local character of defendant Maine church's synagogue construction makes litigation in Texas less reasonable). The Andover defendants do not claim their business is of a primarily local character. Nor, despite defendants' assertion to the contrary,[16] are the Andover businesses of a strictly regional character confined to the Northeast. Mr. Marchese's Affidavit alone explains the defendants' involvement with South Dakota, Delaware, Maine, Connecticut, Florida, Texas, and New York.[17] That

---

15. *See* Affidavit ¶¶ 15 and 17.

16. Defendants' Brief, page 3.

17. Andover Funding Limited is a South Dakota general partnership with a Delaware corporation as its general partner. Affidavit ¶ 3. And-

the Andover defendants' business involves tax shelters [18], bank financing [19], and securities [20] is also important, for a defendant's engaging in such highly regulated activities makes it more reasonable for him to foresee having to litigate in a distant forum. *Oxford First Corp.*, 372 F.Supp. at 202 and n. 23.[21]

Coupling the regulated nature and multi-state scope of the Andover defendants' business with their knowledge that their allegedly illegal conduct was affecting these particular Texas plaintiffs, this court concludes that a reasonable person in the Andover defendants shoes would have anticipated being haled into a Texas court. The Andover defendants simply did not structure their conduct to gain the Due Process Clause's minimal assurance that they would not be liable to suits in Texas. This court accordingly finds that the second factor—one's reasonable expectation of distant forum litigation—does not bolster the Andover defendants' claim that this court's asserting personal jurisdiction would violate traditional notions of fair play and substantial justice.

### D. Plaintiffs' Interest

The third factor this court must consider is plaintiffs' interest in convenient and effective relief. *World-Wide Volkswagen*

*Corp.*, 444 U.S. at 292, 100 S.Ct. at 564; *Burstein*, 693 F.2d at 521; *Bamford*, 569 F.Supp. at 166. Thus in reversing the district court's refusal to exercise personal jurisdiction over an out-of-state defendant in *DeMelo*, the Fifth Circuit emphasized the practical importance to the plaintiff of being allowed to join all parties to that products liability action in one suit. 711 F.2d at 1272; *see also Lapeyrouse v. Texaco, Inc.*, 693 F.2d 581, 588 (5th Cir.1982) (finding personal jurisdiction over an objecting out-of-state defendant because, inter alia, Texas was a convenient and effective forum for plaintiffs to get relief). Allowing the plaintiff to join all defendants in one action is especially important in modern multi-party securities litigation. *See Oxford First Corp.*, 372 F.Supp. at 201. Section 78aa, moreover, represents a congressional policy to guarantee security plaintiffs' liberal choice of forum. *Leroy v. GWU Corp.*, 443 U.S. 173, 188, 99 S.Ct. 2710, 2719, 61 L.Ed.2d 464 (White, Brennan, and Marshall, JJ., dissenting) (1979); *Carpenter v. Hall*, 352 F.Supp. 806, 809–10 (S.D.Tex. 1972); *Ritter v. Zuspan*, 451 F.Supp. 926, 928 (E.D.Mich.1978).

The Andover defendants argue that plaintiffs could sue them in Connecticut.[22] But as already noted in this opinion,

over Financial Corporation is a Maine corporation with its principal place of business in Connecticut. *Id.* These entities were formed to finance tax sheltered investments, and they do much business with Delaware limited partnerships. *Id.* ¶¶ 3 and 4. The Andover defendants located a potential financing source in Connecticut for plaintiffs' investment in the Florida limited partnership at issue here, *id.* ¶¶ 10 and 22, reviewed the loan applications for the Texas plaintiffs here, *id.* ¶ 15, and were involved in arranging a New York meeting to discuss the Texas plaintiffs' inability to qualify for unsecured financing, *id.* ¶¶ 16–18.

**18.** *Id.* ¶ 4.

**19.** *See Id.* ¶¶ 4, 8, 10, 22.

**20.** The Andover businesses were involved in this transaction and, as this court's Memorandum and Order of September 13, 1984 found, this transaction clearly involved securities.

**21.** With the notable exception of *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191 (E.D.Pa.1974), federal decisions have applied the "national-contact" test to American defendants objecting to personal jurisdiction under Section 78aa. Moreover *Oxford First Corp.* has been expressly rejected by the Fifth Circuit in *Jim Walter*, 651 F.2d at 256 n. 9; *accord e.g.*, *Clement*, 575 F.Supp. at 439 (decided *after Insurance Corp. of Ireland*); *Fitzsimmons*, 589 F.2d at 334. Given the Andover defendants' abundant contacts with the nation as a whole and their securities involvement here, they should have reasonably anticipated being haled into *any* U.S. District Court in the country. This court does not accord that aspect of foreseeability alone great weight, however, for to do so would allow Congress to bootstrap nationwide service over the Due Process hurdle of defendants' reasonable expectations.

**22.** Defendants' Brief, page 22.

**318**

plaintiffs all reside in Houston, and many of the primary securities violations at issue occurred within this district. Defendants in this suit include individuals residing in Florida, Pennsylvania, New York, Connecticut, and Texas, entities formed in or with a principle place of business in Florida, Colorado, South Dakota, Maine, and Connecticut, and a federally chartered savings and loan association.[23] The bulk of these defendants are already before this court.[24] Forcing plaintiffs to pursue a separate second suit in Connecticut to fully remedy this one securities fraud scheme would not be convenient and effective. Since the Southern District of Texas is one of if not the most convenient and effective forums in which plaintiffs could seek relief, the third factor weighs in favor of this court's exercising personal jurisdiction over the Andover defendants.

### E. Federal Judicial System's Interest

■ The fourth relevant factor is closely tied to the third: the judicial system's interest in the efficient resolution of controversies. *World-Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S.Ct. at 564; *Burstein*, 693 F.2d at 521; *Bamford*, 569 F.Supp. at 166. The Andover defendants' conduct was intertwined with that of their codefendants: The Complaint sets forth various interactions between the Andover defendants and codefendants County Federal Savings & Loan, Botchman, Galanis, Equine, and Equine's general partners. It further avers that the Andover defendants acted in an employment or agency relationship with Equine and the Equine general partners. The Complaint concludes that the Andover defendants' participation in this allegedly fraudulent scheme renders them liable for aiding and abetting sundry

violations of federal and Texas securities acts, breaching fiduciary duties, and negligence.[25] It would be more efficient to resolve this dispute in one proceeding rather than two. *See, e.g., Oxford First Corp.,* 372 F.Supp. at 202; *Lapeyrouse,* 693 F.2d at 589. For the reasons discussed above concerning plaintiffs' interest in one effective and convenient forum, this court concludes that it would promote the federal courts' interest in judicial economy to exercise personal jurisdiction over the Andover defendants.

### F. Texas's Interest

■ The fifth factor this court must assess is the forum state's interest in adjudicating the particular dispute at bar. *World-Wide Volkswagen Corp.,* 444 U.S. at 292, 100 S.Ct. at 564; *Burstein,* 693 F.2d at 521; *Bamford,* 569 F.Supp. at 166. For example, in *DeMelo* the defendant paint manufacturer's only apparent contact with Mississippi was its shipping products into Mississippi which it had sold to Mississippi entities. 711 F.2d at 1271. The District Court for the Southern District of Mississippi dismissed that New York manufacturer for want of personal jurisdiction on the ground that that defendant lacked the minimum contacts with Mississippi required by the Due Process Clause. *Id.* at 1262. In reversing the district court, the Fifth Circuit noted as relevant Mississippi's exceptionally strong interest in providing its residents a forum to redress injuries caused by defective products shipped into Mississippi, and thus stated that the plaintiffs' being Mississippi residents was alone significant. *Id.* at 1272. Similarly here, Texas has an exceptionally strong interest in providing its residents a forum to redress injuries caused by fraudulent securities schemes

---

**23.** Complaint ¶¶ 5–18; Affidavit ¶ 3.

**24.** *See e.g.* this court's orders of May 22 and September 13, 1984 denying motions to dismiss by defendants Kurzman, Reardon, Popick, Popick Funding Inc., Jebrock, and Lewis, and the answers of defendants County Federal Savings & Loan Association, Tanski, and Fox & Co.

**25.** Relations and conduct between the Andover defendants and other defendants are detailed in Complaint ¶¶ 23–25, 33–35, 38, 49, 56, 59, 61, 64, 67, 71, 75, and Affidavit ¶¶ 7–22.

which reach into Texas. In this regard, exercising personal jurisdiction here is further supported by Texas's having manifested through extensive state regulation its strong interest in protecting defrauded securities buyers. *Cf. Burstein,* 693 F.2d at 519 and 522 (distinguishing the Supreme Court's approval of personal jurisdiction over the out-of-state insurance company in *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), in part by explaining that insurance transactions are highly state regulated, and thus states have a particularly strong interest in resident victims of insurance fraud). Texas's strong interest in providing resident victims of securities fraud a forum for relief therefore weighs in favor of this court, sitting in Texas, exercising personal jurisdiction over the Andover defendants.

### G. Summation

 This court has concluded that Texas litigation would not impose an impermissible burden upon the Andover defendants, and that a person in their place would have reasonably expected or foreseen Texas litigation. Thus Due Process's fairness concerns do not weigh greatly against this court's exercising personal jurisdiction. Moreover, the additional Due Process considerations of plaintiffs' interest in convenient and effective relief, the courts' interest in judicial economy, and Texas's interest in providing a forum for this particular dispute, all weigh in favor of this court's asserting personal jurisdiction. This court therefore decides that its exercising personal jurisdiction over the Andover defendants would not violate the Due Process Clause of the Fifth Amendment.

### IV. CONCLUSION

For the reasons given in the Memorandum and Order it is hereby ORDERED, ADJUDGED, and DECREED that the motion of defendants Andover Funding Limit-

ed and Andover Financial Corporation should be, and the same is, DENIED.