**WICHITA FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,**

v.

**LANDMARK GROUP, INC., a Texas Corporation; Landmark Government Securities, Inc., a Texas Corporation; Landmark Securities Corporation, a Texas Corporation; Landmark Investments, Inc., a Texas Corporation; Iowa Grain Company, an Illinois Corporation; Richard Emmett Tisdale; Wayne Winston Moran; Reba Ann Byrd; Steven Martin Kane; Francis Edwin Carpenter; William Benson Stewart; and Emily B. Spencer, Defendants.**

No. 86–1938–K.

United States District Court,
D. Kansas.

April 14, 1987.

1184

Alexander B. Mitchell of Sargent, Klenda, Mitchell & Austerman, Wichita, Kan., for plaintiff.

Donald R. Newkirk, John T. Conlee and Daniel G. Clothier of Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., and John B. Maroney and Glenn Van Shellenbeck of Brown, Maroney, Rose, Barber & Dye, Austin, Tex., for Texas defendants.

Mikel L. Stout of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., and John K. Eggers of Ruberry, Phares, Abramson & Fox, Chicago, Ill., for Iowa Grain.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

Plaintiff Wichita Federal Savings and Loan Association (WFSL) seeks to recover from 12 defendants for losses incurred from investments in government securities, repurchase agreements, and reverse repurchase contracts, and U.S. treasury bond futures contracts on the Chicago Board of

Trade. The first set of defendants includes the Landmark Group, Inc., its subsidiaries, and certain employees and agents, all based in Austin, Texas (hereafter referred to as "the Texas defendants"). The remaining defendant is Iowa Grain Company, an Illinois corporation, which executed plaintiff's trades in Chicago, at the direction of one or more of the Landmark companies working directly with WFSL.

In its complaint, plaintiff seeks recovery under six counts. Count I, ¶¶ 26–28, alleges securities fraud by the Texas defendants in violation of Rule 10b–5 of the Securities and Exchange Commission, and 15 U.S.C. § 78j(b), by these defendants' alleged use of "manipulative or deceptive devices" in connection with the government securities, investments, repurchase agreements, and reverse repurchase agreements. Count II of the complaint, ¶ 29, alleges common law fraud by the Texas defendants in these same transactions, including allegations of fraudulent trading, excessive pricing and self-dealing. Counts I and II involve only the Texas defendants; but the remaining counts involve both the Texas defendants and Iowa Grain. Count III, ¶¶ 30–45, alleges violations of § 6(b) of the Commodity Exchange Act from defendants' fraudulent acts or omissions in the speculative buying and selling of U.S. treasury bond futures contracts, on plaintiff's account, during the spring and summer of 1985. Count IV, ¶¶ 46–47, alleges a violation of defendants' fiduciary duty to plaintiff, by permitting plaintiff to enter these short sales without regard for plaintiff's financial condition and in direct violation of the Federal Home Loan Bank Board regulations. Count V, ¶ 48, alleges common law fraud by defendants in these transactions. Finally, Count VI, ¶¶ 49–52, alleges RICO violations by all defendants.

Both the Texas defendants and Iowa Grain now seek to dismiss plaintiff's complaint for failing to allege fraud with the particularity required by Fed.R.Civ.P. 9(b); the absence of personal jurisdiction over the defendants; and the impropriety of venue in the District of Kansas. Alternatively, all defendants move for transfer of this case to another district.

*Rule 9(b) and the Sufficiency of Plaintiff's Complaint*

The Texas defendants challenge the sufficiency of all six counts of plaintiff's complaint under Rule 9(b); defendant Iowa Grain likewise challenges the sufficiency of Counts III through VI. Rule 9(b) provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Plaintiff responds to defendants' challenges with a variety of case law, primarily *Hagstrom v. Breutman,* 572 F.Supp. 692 (N.D.Ill.1983), emphasizing that the allegations of a complaint are to be viewed in a light most favorable to plaintiff; federal statutes enacted to prevent fraud should be construed flexibly to effectuate their remedial purposes; the sufficiency of a fraud pleading varies with the complexity of the transaction; and all that is necessary is a showing of time, place and substance of the allegedly false representations.

A few recent opinions more fully indicate the standards by which the court must judge the adequacy of plaintiff's complaint. In *Seattle-First National Bank v. Carlstedt,* 800 F.2d 1008 (10th Cir.1986), the circuit analyzed this very issue in a securities fraud context. In that case the district court had dismissed a counterclaim alleging federal securities fraud violations, and the circuit reversed. For our present purposes, however, what the circuit did is less important than what it said. First, the court affirmed that the particularity requirement of Rule 9(b) applies to both securities fraud and common law fraud cases in this circuit. *Carlstedt,* 800 F.2d at 1010 (affirming its earlier decision in *Utah State University v. Bear, Stearns & Co.,* 549 F.2d 164, 171 (10th Cir.), *cert. denied* 434 U.S. 890, 98 S.Ct. 264, 54 L.Ed.2d 176 (1977)). Noting further that a liberal approach is proper in securities fraud cases (in that case, a Rule 10b–5 allegation), the court then stated the following rules:

A court's function in dismissing a counterclaim on the pleadings is merely to determine whether the counterclaim itself is legally sufficient; a court may not dismiss at the pleading stage of the action by weighing the evidence that might be presented or by otherwise considering the counterclaimant's likelihood of success. *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985).

· · · · ·

In *Trussell v. United Underwriters, Ltd.,* 228 F.Supp. 757, 774–75 (D.Colo. 1964), the court elaborated upon the Rule 9(b) requirements:

> Rule 9(b) does not ... require the pleading of detailed evidentiary matter, nor does it require any particularity in connection with an averment of intent, knowledge, or condition of mind. It only requires identification of the circumstances constituting fraud or mistake. That requirement means ... that individual plaintiffs should identify particular defendants with whom they dealt directly, and from whom they purchased stock; that individual plaintiffs should designate the occasions on which affirmative statements were allegedly made to them— and by whom; and that individual plaintiffs should designate what affirmative misstatements or half-truths were directed to them—and how.

We believe this is a correct statement of Rule 9(b) requirements in securities fraud cases.

*Carlstedt,* 800 F.2d at 1011. Applying these rules, the circuit reversed Judge Bohanon because:

> The counterclaims identify the counterdefendants with whom the counter-plaintiffs dealt directly, and from whom they purchased the stock; the occasions on which affirmative misstatements were allegedly made to counter-plaintiffs; and, what affirmative misstatements or half-truths were directed to counter-plaintiffs and how those statements were made.

*Id.,* at 1011–12. Judge Moore dissented, finding the counterclaim was merely "a prolix tale of woe which requires an industrious effort to find the significant averments." *Id.*

Yet another statement of the applicable rules is found in *Andreo v. Friedlander, Gaines, Cohen, etc.,* 651 F.Supp. 877, 879–80 (D.Conn.1986):

> Failure to plead fraud with particularity justifies dismissing the complaint. *Since Rule 9 is a rule of pleading, allegations made in briefs or affidavits do not satisfy the pleading requirements.* Where the failure to plead fraud with the requisite particularity occurs after a second attempt to do so, the court may, in its discretion, dismiss with prejudice.

> The case law has elaborated on the Rule 9(b) requirement. In order to state the "circumstances constituting fraud ... with particularity," a complaint must state who made the misrepresentations, when those misrepresentations were made, what the misrepresentations were, and how they were directed to the plaintiffs. In addition, although 9(b) allows general allegations as to knowledge and intent, such allegations must "supply a factual basis for [the] conclusory allegations" by pleading the specific "events which they assert give rise to a strong inference that the defendants had knowledge." Similarly, where allegations are based on information and belief the complaint must set forth the source of the information and the reasons for the belief. Thus, conclusory allegations that defendants participated in a scheme to defraud are insufficient.

(Citations omitted; emphasis added.) The court dismissed the complaint at issue in *Andreo* because it failed to allege when material misrepresentations were supposedly made by the defendant, and the complaint failed to contain allegations providing a factual basis for a strong inference that defendant knew the statements made were actually false. 651 F.Supp. at 880–82.

■ Following *Carlstedt,* the court must analyze plaintiff's complaint in this case and ask:

(1) Does it identify the particular defendants with whom plaintiff dealt directly?

(2) Does it identify the particular defendants from whom plaintiff purchased these investment products, and when?

(3) Does it identify the occasions on which affirmative statements were allegedly made to plaintiff, and by whom among the defendants?

(4) Does it designate what affirmative misstatements, or half-truths, were directed to plaintiff, when, and how?

And finally, regarding plaintiff's allegations of defendants' intent and knowledge, following *Andreo* the court must ask:

(5) Do the general allegations of the complaint plead the basis for defendants' alleged knowledge, or reckless disregard for the truth, with respect to the claimed misrepresentations?

The following short analysis of each count, in light of these questions, exposes serious deficiencies in the complaint.

*Count I: Securities Fraud*

■ Paragraph 27 alleges that beginning in 1980, plaintiff began investing in government securities, and repurchase agreements, and reverse repurchase contracts "with one or more of the defendants" other than Iowa Grain. It does not identify which of the Texas defendants with whom plaintiff dealt. Paragraph 28 alleges that in the course of plaintiff's investment program, the Texas defendants "individually or collectively, or as aiders and abettors," engaged in these transactions in violation of federal law:

by means of manipulative, deceptive and fraudulent devices and contrivances, by making untrue statements of material facts or by omitting to state material facts necessary to avoid the misleading affects [sic] of the statements that were made, and by engaging in acts, practices and a course of conduct which operated as a fraud and deceit upon the plaintiff, to include excessive and unreasonable price mark-ups, by self-dealing, and by failing to disclose to plaintiff the defendant's true compensation and profits by these transactions.

Plaintiff fails to identify which particular defendants interacted with plaintiff in these matters; or those from whom plaintiff purchased these investments; the "who, when, where and what" of the falsehoods allegedly made, and the nature of the material facts allegedly omitted or concealed by defendants; which of the defendants were responsible for the misstatements and/or omissions; and the basis for the defendants' supposed knowledge or reckless disregard of the truth concerning the alleged misrepresentations actually made. Lastly, with regard to the "aiding and abetting" claim, the Tenth Circuit in *Carlstedt* noted that claims seeking to impose aiding and abetting liability under securities laws must likewise satisfy Rule 9(b), and may not be based on routine participation in certain transactions. 800 F.2d 1008, 1011 n. 2. Likewise, in *Andreo* the court said:

The particularity requirements of Rule 9(b) also apply to allegations of aiding and abetting securities fraud. The elements for an aiding and abetting claim are (1) that there be a primary fraud, (2) that the aider and abettor have "knowledge" of the fraud, and (3) that aider and abettor provide "substantial assistance" to the achievement of the primary fraud. The knowledge element of aiding and abetting may be satisfied by recklessness where the defendant owes a fiduciary duty to the plaintiff. Thus, the circumstances giving rise to an aiding and abetting claim must be pleaded, Fed.R.Civ.P. 9(b); conclusory allegations are insufficient....

651 F.Supp. at 880 (citations omitted).

*Count II: Common Law Fraud*

In ¶ 29, plaintiff alleges the Texas defendants' activities regarding the repurchase and reverse repurchase agreements operated as a common law fraud against plaintiff. This count incorporates by reference the content, and thus the deficiencies, of Count I.

*Count III: Commodity Exchange Act Violations*

Pled with more specificity than most, this count requires a short synopsis of each paragraph:

¶ 30—defendants (including Iowa Grain) are futures commission merchants.

¶ 31—On February 27, 1985, without plaintiff's knowledge or approval, defendants entered into a short sale of 1,930 commodity futures contracts for U.S. treasury bonds with a face value of $193 million. Plaintiff's position on these contracts was closed March 1, 1985, at a profit of approximately $417,000.00.

¶ 32—On March 25, 1985, again without plaintiff's knowledge or approval, defendants entered a similar position (1,950 contracts) for bonds with a value of approximately $195 million, a commitment far exceeding plaintiff's net worth.

¶ 33—Plaintiff immediately began to accrue losses on that position.

¶ 34—As of that time defendants knew or should have known plaintiff could not, and did not, monitor its position.

¶ 35—At all times defendants lacked sufficient information to permit them to determine the suitability of this investment for plaintiff.

¶ 36—On May 28, 1985, defendants, on behalf of plaintiff, sold short the 1,950 futures contracts, with a commission to defendants of $97,500.00.

¶ 37—On June 17, 1985, defendants Tisdale, Kane, Carpenter and Spencer appeared before the plaintiff's board of directors in Wichita, but failed to disclose the existence, nature and risk of plaintiff's market position, as well as accrued but unrealized losses.

¶ 38—On June 21, 1985, defendants closed out plaintiff's position on the 1,950 September futures contracts at a substantial loss to plaintiff, but with an additional $97,500.00 commission to defendants.

¶ 39—Plaintiff did not discover the loss until July 16, 1985.

¶ 40—Defendants knew, or should have known, plaintiff's investment in the commodity futures contracts violated the regulations of the FHLBB.

¶ 41—At all times defendants held themselves out as experts in commodities futures transactions for savings and loan associations, and enticed plaintiff to engage in these highly speculative transactions.

¶ 42—Defendants knew, or should have known, plaintiff lacked knowledge and sophistication in these matters, would rely on defendants' representations, and otherwise would not have made these investments.

¶ 43—At all times defendants exercised *de facto* discretionary control of plaintiff's account, to the detriment of plaintiff.

¶ 44—Defendants "willfully and fraudulently committed acts or omissions in the speculative buying or selling of commodity futures contracts in violation of § 6(b) of the Commodity Exchange Act," including (a) making representations to plaintiff about, or failing to disclose, the risk; (b) failing to inquire about plaintiff's financial resources, the suitability and compliance of these investments; and (c) failing to insure plaintiff would continuously monitor its futures position to avoid a substantial loss.

¶ 45—Through the use, means or instrumentalities of interstate commerce and the U.S. mail, and with the specific intent to defraud plaintiff, defendants "either individually or collectively, or as aiders or abettors," caused the purchase of these futures contracts for plaintiff "by means of manipulative, deceptive and fraudulent devices and contrivances, by making untrue statements of material facts or omitting to state material facts necessary to avoid the misleading effects of the statements that were made, and by engaging in acts, practices and a course of conduct which operated as a fraud and deceit upon the plaintiff."

These paragraphs identify the following: (1) the particular futures transaction on which recovery is sought; (2) relevant dates; and (3) the four individual defendants which appeared before plaintiff's board but failed to disclose plaintiff's current market position. However, these allegations do not identify: (a) which of the defendants actually sold these investments to plaintiff; (b) which of the defendants plaintiff dealt with directly in this matter; (c) the "who, where, when and what" of the affirmative misrepresentations allegedly made, and by whom among the defendants (other than those which failed to disclose

plaintiff's position to the board on June 21, 1985); (d) a detailed basis for defendants' knowledge or reason to have knowledge of the unsuitability and the possible illegality of these investments for plaintiff; (e) a detailed basis for defendants' knowledge, or reason to have knowledge, of plaintiff's inability to monitor its position; (f) the specific nature of the material facts which were concealed by the defendants, and by which among them; and (g) the nature of the "manipulative, deceptive and fraudulent devices and contrivances" employed by defendants, and the specific acts of using interstate commerce and the U.S. mail with intent to defraud plaintiff.

■ Overall, Count III gives the court and defendants the background information of predicate market transactions on which plaintiff claims a violation of § 6(b) of the Commodity Exchange Act, and general allegations providing the basis for defendants' alleged knowledge or reckless disregard for the truth. But it fails to provide the detailed and specific information about the particular misrepresentations and omissions, their nature, by whom made, or who failed to make the necessary statements, the dates and locations, etc. These allegations are the ones crucial to plaintiff's basis for recovery, and I cannot conclude the pleading is adequate under Rule 9(b) and *Carlstedt.*

### Count IV: Violation of Fiduciary Duty

■ In ¶ 46 plaintiff alleges its limited resources, as well as FHLBB regulations, prohibited plaintiff from speculative investing in the amount and character of these futures commodities. Paragraph 47 alleges defendants, in violation of their fiduciary duty to plaintiff, failed to properly supervise its agents and employees because defendants knew, or should have known, of the unsuitability and possible illegality of these investments for plaintiff. Neither this count, nor ¶¶ 40 and 42, provide the basis for defendants' supposed knowledge, or reason to have knowledge, of plaintiff's inability and unsuitability to invest in these commodities. Further, it does not allege which defendants directly interacted with

plaintiff and had this knowledge. It does not allege which defendants interacted with, and had supervisory control over, plaintiff's agents and employees. It does not identify whom among plaintiff's agents and employees were responsible for dealing with defendants, and it does not allege the specific details about when, and under what circumstances, defendants allegedly permitted plaintiff's agents and employees to commit plaintiff to this investment strategy. Count IV is inadequate.

### Count V: Common Law Fraud

■ In ¶ 48 plaintiff realleges the contents of ¶ 44 (Count III, *supra*), claiming the same acts and omissions are additionally a common law fraud upon plaintiff. Again, the details of "who, when, where and what" are wholly lacking.

### Count VI: RICO Violations

Paragraph 49 alleges the various Landmark companies and Iowa Grain are "enterprises" affecting interstate commerce within the meaning of 18 U.S.C. § 1961. Plaintiff alleges in ¶ 50 that as part of their overall scheme to defraud plaintiff, defendants engaged in a pattern of racketeering activities under 18 U.S.C. § 1961(5) by wire and mail fraud, including: (a) defendants' use of the U.S. mail on two or more occasions, including the mailing of margin notices, confirmation statements, monthly statements, and general correspondence, thereby violating 18 U.S.C. § 1341; and (b) defendants' use on two or more occasions of wire and telephone communications, regarding both the trades on plaintiff's account and the transfers of funds, violating 18 U.S.C. § 1343. In ¶ 51 plaintiff alleges defendants engaged in this conduct in an organized and systematic fashion, constituting "a pattern of racketeering activity as defined in 18 U.S.C. § 1061(1)" [sic; § 1961(1) ]. Lastly, in ¶ 52 plaintiff alleges it suffered injury to its business and property by reason of defendants' conduct.

■ The civil RICO provisions are constructed on the model of a treasure hunt. Section 1964(c) provides that "[a]ny person injured in his business or property by rea-

son of a violation of § 1962" may recover treble damages from the violator. Section 1962 can be violated in four different ways. It is unlawful (a) "for any person who has received any income ... from a pattern of racketeering activity ... to use any part of such income ... in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce;" (b) "for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or any control of any [such] enterprise;" (c) "for any person employed by or associated with any [such] enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity;" or (d) "for any person to conspire to violate any of the provisions of" the previous subsections. Regardless of which subsection of § 1962 is alleged to be violated (and plaintiff here specifies none), certain elements are essential to state a claim: (1) a person; (2) an enterprise; (3) racketeering activity which (4) occurred in a pattern, and (5) caused injury to plaintiff. *H.G. Gallimore, Inc. v. Abdula*, 652 F.Supp. 437, 439–40 (N.D.Ill. 1987).

■ "Person", although defined broadly in § 1961(13) to include "any individual or entity capable of holding a legal or beneficial interest in property," requires that the plaintiff in the complaint identify each "person" who is alleged to be liable under RICO. " 'Collectivizing "defendants" in the alleged pattern of racketeering activity ... will not suffice,'." *Gallimore*, 652 F.Supp. at 440 (quoting *Cashco Oil Co. v. Moses*, 605 F.Supp. 70, 71 (N.D.Ill.1985)).

■ The second element of a properly pled RICO claim is an "enterprise engaged in, or the activities which affect, interstate commerce." The "enterprise" is not the pattern of racketeering activity; it is an entity separate and apart from the activity in which it engages. A RICO enterprise must exhibit three basic characteristics: (1) common or shared purpose; (2) some continuity of structure; and (3) an ascertainable

structure distinct from that inherent in the conduct of the pattern of racketeering. Plaintiff must also allege some nexus between the enterprise and interstate commerce, but that burden is minimal. *Gallimore*, 652 F.Supp. at 440–41. Our court has had substantial experience with the pleading requirements of a RICO claim, and regarding the element of "enterprise" has held:

> It is plaintiff's burden to allege the separate existence of an "association in fact" with a common purpose, continuity of structure and personnel, and an ascertainable structure distinct from the pattern of racketeering.

*NL Industries, Inc. v. Gulf & Western Industries, Inc.*, 650 F.Supp. 1115, 1128 (D.Kan.1986).

The third element of a RICO claim is "racketeering activity", for which plaintiff must allege defendants committed one or more of the offenses listed in § 1961(1). Each of those offenses has its own pleading requirements. *Gallimore*, 652 F.Supp. at 441. Section 1961(1) includes the offenses of mail fraud in violation of 18 U.S.C. § 1341, and wire fraud in violation of 18 U.S.C. § 1343, the offenses which plaintiff relies on in this case. The *Gallimore* court's treatment of similar allegations in that case are instructive:

> "A complaint is not sufficient if it does not specify the nature of the predicate acts to a degree which will allow the defendants to comprehend the specific acts to which they are required to answer.... The allegations of criminal activity must ... comply with notice of pleading requirements; pure assertions of a statutory violation standing alone are not sufficient."

[*Ray v. Karris*, 780 F.2d 636] at 645 [ (7th Cir.1985) ], (dismissing a RICO claim where mail and wire fraud allegations were insufficient and securities allegations under Rule 10b–5 failed to state a claim)....

In addition, Fed.R.Civ.P. 9(b), which requires that allegations of fraud specify "with particularity" the circumstances of the alleged fraud, applies to fraud allega-

tions in a civil RICO complaint. To satisfy Rule 9(b), the plaintiff must describe the time, place, particular contents of the false representations, the identity of the party making the misrepresentation, and the consequence of the misrepresentation. Where there are multiple defendants, the complaint must inform each defendant of the specific fraudulent acts justifying his inclusion in the count. However, Rule 9(b) only requires that the complaint outline a fraudulent scheme and reasonably notify each of the defendants of their respective roles.

*Gallimore,* 652 F.Supp. at 441 (citations omitted). Once again, our own court has already recognized these principles and applied them to find insufficient the wire/mail fraud allegations in *NL Industries:*

> [A] RICO claim predicated upon alleged wire or mail fraud must be set forth with enough particularity to satisfy Rule 9(b). When alleging wire and mail fraud as predicate acts of racketeering, a claimant must, pursuant to Rule 9(b), describe with particularity the circumstances constituting the fraud, including such matters as the time, place and content of the false representations, as well as identify the person making the misrepresentations and what was obtained or given thereby. The crime of mail fraud encompasses two well-defined elements: (a) the defendant must have first devised a scheme or artifice to defraud, and (b) then used the mails for the purpose of executing this scheme.
>
> The plaintiff in this case has failed to allege the "time, place and content" of the fraudulent use of the mails or wires. Accordingly, plaintiff has failed to satisfy the requirements of Rule 9(b)....

650 F.Supp. at 1126 (citations omitted). Lastly, with regard to this element, to whatever extent plaintiff's RICO count incorporates by reference the allegations of the previous five counts, the insufficiency of those allegations infects the RICO claim as well.

> Since the allegations with respect to [defendant's] conduct were not specific enough to sustain a fraud claim against

[defendant], they are not specific enough to state the necessary predicate acts for a RICO claim. Thus, to the extent plaintiff's ... complaint relies on the alleged securities frauds as predicate acts, it fails to state a RICO claim against [defendant].

*Andreo,* 651 F.Supp. at 882.

The fourth necessary element of an adequate RICO claim is a "pattern", an element which this court also addressed in *NL Industries:*

> In the now infamous footnote 14 of *Sedima SPRL v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346, 358 (1985), the court stated: "Proof of two acts of racketeering activity, without more, does not establish a pattern.... The target of [RICO] is ... not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." ... The alleged predicate acts herein are clearly "related". To be "continuous," more than sporadic or isolated activity must be alleged. In *AgriStor Leasing v. Meuli,* 634 F.Supp. 1208 (D.Kan.1986), this court held that in order to be "continuous," the "predicate acts must have taken place in the course of different criminal episodes of fraudulent schemes." Whether the predicate acts are sufficiently continuous within the meaning of *Sedima* depends on such factors as the number of predicate acts, their duration, the nature of the scheme they are designed to promote, the actual or potential number of victims, the nature of the scheme's objectives, the number of participants in this scheme, the potential for continued criminal activity, and whether the particular scheme is part of a broader set of criminal objectives. In the case at bar, the alleged commercial bribery, and any fraudulent use of the mails or wires or airlines arose from a single episode—the attempt to obtain a contract from NL in November 1981 to purchase air pressure vessels. This is not sufficiently continu-

ous to constitute a "pattern" as this court has interpreted that term for purposes of a RICO violation.

650 F.Supp. at 1127.

Finally, plaintiffs seeking recovery for RICO violations must allege injury to business or property by reason of defendant's conduct constituting the violation. *Gallimore*, 652 F.Supp. at 442.

■ Applying these rules to the RICO allegations of plaintiff's complaint highlights the inadequacies of the pleading. Of primary concern is the third element (racketeering activity) and the fourth (pattern). All we are presented with in plaintiff's RICO claim are the allegations that "defendants", as "enterprises", used the mail and wires of interstate commerce in the course of a common scheme and conspiracy to defraud plaintiff, by reason of which plaintiff was injured. The predicate acts on which plaintiff relies to show racketeering activity, whether they be the wire and mail fraud allegations of ¶ 50 and ¶ 51, or the earlier allegations of fraud in Counts I-V, are utterly void of the "who, what, where and when" details necessary to satisfy Rule 9(b). Neither the court nor defendants are told: the nature of the correspondence; who made each and when; the contents of the correspondence; and what about it was false or fraudulent, or what material facts were not included. Regarding the element of a "pattern", one reading Count VI is left wondering whether the RICO allegations relate to: (a) *all* defendants' activities during the entire term defendants handled plaintiff's portfolio; (b) defendants' activities relating to the purchase and sale of government securities, repurchase and reverse repurchase agreements, *and* the short sales of U.S. treasury bond futures; or (c) defendants' activities only in connection with the one short sale of treasury bond futures beginning in May, 1985. If (c) is correct, then regardless of defendants' allegedly fraudulent uses of the mail and wires, those occurred only with regard to a single episode—the short sale itself. No more of a "pattern" is alleged here than was pled in *NL Industries, supra*, if this is the correct interpre-

tation of the complaint. If, on the other hand, (a) or (b) is the correct interpretation, then perhaps there is a "pattern" under the theory each investment defendants made on plaintiff's behalf was a separate undertaking, and the use of mail and wires in connection with each constituted the requisite pattern. The court expresses no opinion on the merits of such an approach, for even if that is what plaintiff intended, Count VI still fails to set forth allegations necessary to both satisfy Rule 9(b) and show the predicate acts are sufficiently continuous, as required by *Sedima*.

### Personal Jurisdiction

In ¶¶ 1–4 of its complaint, plaintiff alleges this court has jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1332 (diversity jurisdiction); 7 U.S.C. § 25(c) (Commodity Exchange Act); 18 U.S.C. § 1964(c) (RICO); and 15 U.S.C. § 78aa (Security Exchange Act of 1934). In their motions to dismiss, each defendant challenges the court's jurisdiction under the Kansas long arm statute, K.S.A. 60–308(b). Plaintiff's primary response is that our jurisdiction is coextensive with the nationwide service of process authorized by 15 U.S.C. § 78aa, and 18 U.S.C. § 1964(c). Plaintiff relies on a small number of cases for support, all of which are perhaps best exemplified by *Clement v. Pehar*, 575 F.Supp. 436, 438 (N.D.Ga.1983):

Defendants' argument with respect to personal jurisdiction relies entirely on a "minimum contacts" analysis derived from *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. This argument, however, misconceives the basis of this Court's jurisdiction over defendants in the instant action. Jurisdiction here is founded on specific statutory provisions authorizing nationwide service of process in federal securities and RICO cases. *See* 15 U.S.C. §§ 77v(a), 78aa and 18 U.S.C. § 1965(d). Service of process on defendants in California was therefore authorized under Fed.R.Civ.P. 4(e)'s provision for extraterritorial service of process "[w]henever a statute of the United States or an order of court thereun-

der provides." Where such nationwide service of process is authorized, a federal district court's jurisdiction is "coextensive with the boundaries of the United States, [and] due process requires only that a defendant in a federal suit have minimum contacts with the United States, 'the sovereign that has created the court.'" *FTC v. Jim Walter Corp.*, 651 F.2d 251, 256 (5th Cir. Unit A 1981) (quoting *Stafford v. Briggs*, 444 U.S. 527, 554, 100 S.Ct. 774, 789, 63 L.Ed.2d 1 (1980) (Stewart J., Dissenting)).

Judge Crow of this court has agreed, in dicta, that where service is effected pursuant to the 1934 Securities Exchange Act, "due process contacts analysis is unnecessary to establish personal jurisdiction." *Pioneer Properties, Inc. v. Martin*, 557 F.Supp. 1354, 1358 n. 6 (D.Kan.1983).

By no means, however, is there unanimity of views on this issue.

> The extraterritorial service provisions [such as 15 U.S.C. § 78aa] are intended to permit the exercise of jurisdiction to the full extent allowed by due process. There is some question, however, as to whether the defendant must have contact sufficient to meet the *International Shoe* minimum with the state in which the federal court sits, or whether such contact with the nation as a whole will suffice. One of the best discussions of the issue is Judge Becker's opinion in *Oxford First [Corp.] Group v. PNC Liquidating Corp.* [, 372 F.Supp. 191 (E.D. Pa.1974).] The opinion lucidly analyzes the issue, citing cases and secondary authorities on both sides. The court concludes that due process implies more than just territorial restrictions on a sovereign's power; it calls for basic "fairness". The court goes beyond *International Shoe* in formulating a fairness test for purposes of Fifth Amendment due process limits on the range of a federal court's personal jurisdiction. The court concludes that fairness requires consideration of connections between the action and the locale in which the federal court sits, not just the contact between the defendant and the United States as a whole.

Casad, *Jurisdiction in Civil Actions* ¶ 5.03[4][a] (1983).

Further direction on this issue is provided by *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702–03, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982), where the court stated:

> The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause. The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty.[10] Thus, the test for personal jurisdiction requires that "the maintenance of the suit ... not offend 'traditional notions of fair play and substantial justice.'"

And in footnote 10 to this passage, the court further noted:

> The restriction on state sovereign power described in *World-Wide Volkswagen Corp. [v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), holding that a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum state], ... must be seen as ultimately a function of the individual liberty interest preserved by the Due Process Clause. That clause is the only source of the personal jurisdiction requirement and the Clause itself makes no mention of federalism concerns. Furthermore, if the federalism concept operated as an independent restriction on the sovereign power of the court, it would not be possible to waive the personal jurisdiction requirement: Individual actions cannot change the powers of the sovereignty, although the individual can subject himself to powers from which he may otherwise be protected.

*Insurance Corp. of Ireland*, 456 U.S. at 702 n. 10, 102 S.Ct. at 2104 n. 10. The characteristics of waiver and estoppel sur-

rounding the requirement of personal jurisdiction "portray it for what it is—a legal right protecting the individual." *Id.* at 704, 102 S.Ct. at 2105.

The Fifth Circuit Court of Appeals has recognized the *Ireland* decision may undermine its holding in *Jim Walter Corp.*, the primary authority on which *Clement v. Pehar* relied. *Burstein v. State Bar of California*, 693 F.2d 511, 515–16 n. 8 (5th Cir. 1982); *see also DeMelo v. Toche Marine*, 711 F.2d 1260, 1272 n. 16 (5th Cir.1983). Neither *Clement* nor *Pioneer Properties* considered "the fundamental change that *Insurance Corp. of Ireland* made in the interests protected by Due Process minimum contacts analysis"; at least one other court has concluded the Supreme Court's decision "breathes new life into the reasoning and authority of *Oxford First Corp.*" *GRM v. Equine Inv. and Man. Group*, 596 F.Supp. 307, 314 nn. 9, 10 (S.D.Tex.1984). The rejection of sovereignty as a basis for *in personam* jurisdiction means there is no compelling reason for a court to observe sovereign boundaries and equate "fair play and substantial justice" with minimum contacts with the United States. *Bamford v. Hobbs*, 569 F.Supp. 160, 166 (S.D.Tex.1983).

 Questions of personal jurisdiction require, first, a statutory analysis focusing on defendant's conduct and activities, and second, a due process "minimum contacts" analysis. *See Green Country Crude, Inc. v. Avant Petroleum, Inc.*, 648 F.Supp. 1443, 1445 (D.Kan.1986), and cases cited therein. In a federal question case, where a nonresident defendant is served pursuant to the nationwide service of process statutes, the fact of service negates any need for a jurisdictional analysis under the forum state's long arm statute; Congress has supplied the statutory basis for jurisdiction. In this context, the issue of statutory long arm jurisdiction exists only regarding individual noncorporate defendants not subject to service under the federal laws in question. *Bamford v. Hobbs*, 569 F.Supp. at 167–68, citing *Burstein v. State Bar of California*, 693 F.2d 511 (5th

Cir.1982). This line of cases construing and applying *Insurance Corp. of Ireland* makes it clear that the issue of personal jurisdiction over a nonresident defendant (corporate or otherwise), which is properly served under the nationwide service of process statutes, entails a Fifth Amendment due process "minimum contacts" analysis, with consideration given to the following factors: (1) the burden imposed upon defendant by litigation in the forum state; (2) defendant's reasonable expectations and the foreseeability of litigation in the forum state; (3) plaintiff's interest in convenient and effective relief; (4) the federal judicial system's interest in efficiently resolving controversies; and (5) the forum state's interest in having a court, within the forum state, adjudicate the dispute. *GRM v. Equine Inv. and Man. Group*, 596 F.Supp. at 315; *see also Bamford v. Hobbs*, 569 F.Supp. at 166.

The court firmly believes these well-reasoned authorities are more consistent with the quintessence of personal jurisdiction—a legal right protecting the individual under the United States Constitution, as recognized by the Supreme Court in *Insurance Corp. of Ireland.* Thus, the fact Congress both created this court, and provided for nationwide service of process under certain substantive federal laws, is relevant to the question of personal jurisdiction over these nonresident defendants only insofar as it eliminates the need for an inquiry into statutory basis for jurisdiction under the laws of Kansas. To this extent any attempted reliance on K.S.A. 60–308(b), to show there is no statutory basis for jurisdiction in this case, is misplaced. This court's decision in *Green Country Crude* addressed long arm jurisdiction, under Kansas law, in a *diversity* case. The present case, by contrast, is a *federal question*, and the foregoing analysis indicates why a statutory jurisdictional analysis is unnecessary with regard to any defendant properly served under federal law. But plaintiff's further argument, that "nationwide service equals personal jurisdiction" is fundamental error. *Insurance Corp. of Ireland* indicates, and *GRM* and

*Bamford* make clear, that the issue of personal jurisdiction requires a Fifth Amendment due process "minimum contacts" analysis in this case, with full consideration given to the factors previously identified, for each of the 12 defendants.

At this point, however, undertaking the due process jurisdictional analysis would be premature. It is unclear whether all 12 defendants, both corporate and individual, were subject to service under the federal statutes and were actually served thereunder, or whether certain defendants were served under Kansas law. The court has granted plaintiff the privilege of filing an amended complaint complying with Rule 9(b) standards previously set forth; the amended complaint should also make clear the federal or state statutory basis for jurisdiction over each defendant. For any defendant served under federal law, the jurisdictional issue will then be a Fifth Amendment due process minimum contacts analysis; for any defendant served under Kansas law, the issue will be a statutory jurisdiction analysis under K.S.A. 60–308(b) *and* a Fourteenth Amendment due process minimum contacts analysis.

IT IS ACCORDINGLY ORDERED this 14 day of April, 1987, that defendants' respective motions to dismiss are taken under advisement.

IT IS FURTHER ORDERED that the Texas defendants' oral motion for leave to file their answers to interrogatories, in support of their motion to dismiss, is granted.

IT IS FURTHER ORDERED that plaintiff shall have 30 days from this date to prepare and file an amended complaint in compliance with this memorandum and order. The amended complaint shall be filed with the court, with copies to all defendants and their counsel, on or before May 14, 1987.

IT IS FURTHER ORDERED that defendants shall have 30 days after the filing of the amended complaint to amend their respective motions to dismiss, should they desire to do so. Plaintiff shall then have

30 days to respond, and the defendants 10 days thereafter to reply.