WICHITA FEDERAL SAVINGS AND
LOAN ASSOCIATION, Plaintiff,

v.

LANDMARK GROUP, INC., a Texas Corporation; Landmark Government Securities, Inc., a Texas Corporation; Landmark Securities Corporation, a Texas Corporation; Landmark Investments, Inc., a Texas Corporation; Iowa Grain Company, an Illinois Corporation; Richard Emmett Tisdale; Wayne Winston Moran; Reba Ann Byrd; Steven Martin Kane; Francis Edwin Carpenter; William Benson Stewart; and Emily B. Spencer, Defendants.

No. 86–1938–K.

United States District Court,
D. Kansas.

Nov. 24, 1987.

**322**

Alexander B. Mitchell of Klenda, Mitchell, Austerman & Zuercher, Wichita, Kan., for plaintiff.

Donald R. Newkirk, John T. Conlee & Daniel G. Clothier of Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., and John Maroney, Brown, Maroney, Rose, Barber & Dye, Austin, Tex., for Texas defendants.

Mikel L. Stout of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., and John K. Eggers of Ruberry, Phares, Abramson & Fox, Chicago, Ill., for defendant Iowa Grain Co.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

Pending before this court is a renewed motion to dismiss due to improper venue pursuant to 28 U.S.C. § 1406(a) and Fed.R. Civ.P. 12(b)(3), or for lack of personal jurisdiction pursuant to Rule 12(b)(2), and to dismiss Count VII of the amended complaint pursuant to Rule 12(b)(6), brought by the defendants, Landmark Group, Inc., Landmark Government Securities, Inc., Landmark Securities Corporation, Richard Tisdale, Wayne Moran, Reba Ann Byrd, Steven Kane, and Francis Carpenter (collectively the "Texas defendants"). On April 14, 1987, 657 F.Supp. 1182, this court entered an order finding plaintiff's original complaint failed to satisfy the requirements of Fed.R.Civ.P. 9(b), but granting leave to amend. Although the jurisdiction and venue issues were also before the court at that time, the court found that consideration of the issues would be premature. However, the court did state that in order to assert jurisdiction over the Texas defendants, the constitutional due process requirements must be satisfied even though these defendants were subject to nationwide service of process as authorized by 15 U.S.C. § 78aa and 18 U.S.C. § 1964(c). On April 30, 1987, plaintiff filed an amended complaint. On June 1, 1987, the Texas defendants renewed their motion to transfer, or in the alternative to dismiss.[1] This matter has now been fully briefed by the parties, and the court has determined that oral argument would not be of material assistance in the determination of this matter. (Local Rule 15(d).) For the reasons set forth herein, the court finds that it has personal jurisdiction over the nonresident defendants and that venue is proper in this district and will therefore deny defendants' motion to dismiss pursuant to Rule 12(b)(3) and 12(b)(2). Moreover, the court will deny defendants' 12(b)(6) mo-

1. The Texas defendants have since withdrawn their motion to transfer because plaintiff has filed an identical lawsuit in the Western District of Texas where defendants had sought to have this case transferred.

tion to dismiss Count VII (18 U.S.C. § 1961 *et seq.* "RICO") as plaintiff has stated a claim for which relief can be granted.

This action arises out of plaintiff's investments in certain securities and commodities futures in which it incurred substantial losses. Plaintiff alleges that the defendants, acting as its broker, committed various fraudulent acts which violated federal and state laws.

The plaintiff, Wichita Federal Savings and Loan Association, is organized under the laws of the United States and has its principal place of business in Wichita, Kansas. Landmark Group, Inc. and its subsidiaries, Landmark Government Securities, Inc. and Landmark Securities Corporation, are incorporated under the laws of the State of Texas, and their principal place of business is in Austin, Texas. The individual defendants, Richard Emmett Tisdale, Wayne Winston Moran, Reba Ann Byrd, Steven Martin Kane, and Francis Edwin Carpenter, are agents and employees of Landmark. Iowa Grain Company, an Illinois corporation which acted as Landmark's clearing agent on the Chicago Board of Trade, is also named as a defendant, but has this day been dismissed by this court due to lack of personal jurisdiction.

According to the amended complaint, the events which gave rise to this lawsuit began in February of 1984, when plaintiff, through its president, Mr. Black, began investing in United States obligations through defendant Tisdale. At that time, Tisdale was associated with the brokerage firm of Liberty Government Securities in Boca Raton, Florida. In February of 1985, Liberty merged with Landmark, and Tisdale relocated in Landmark's Austin, Texas office. Tisdale continued thereafter to act as plaintiff's broker. Tisdale was a registered "associated person" (7 U.S.C. § 6k) with Landmark Securities Corporation and was its chief executive officer. The other individual defendants—Moran, Byrd, Kane and Carpenter—comprised the board of directors of Landmark Securities Corporation, and—according to the amended complaint—were fully aware of Tisdale's activities and acquiesced in the same.

Plaintiff first alleges that defendants defrauded plaintiff in violation of the Securities Act, 15 U.S.C. § 78j(b), and Rule 10b–5, in connection with plaintiff's investments in government securities. Plaintiff claims that in telephone conversations with defendant Tisdale, Tisdale intentionally misquoted the market price for the securities; would fill the plaintiff's order at a price higher than that quoted to Mr. Black and would keep the difference; would make unreasonable markups in these transactions; and would charge plaintiff a higher interest rate on repurchase agreements than actually available to Tisdale. According to plaintiff, all offers to purchase or sell were made via telephone by Tisdale in Texas to plaintiff in Kansas. Further, trade confirmations were sent by mail to plaintiff in Kansas, and the securities were sent to plaintiff in Kansas. Plaintiff, in turn, sent its payments through the mail from Kansas.

Plaintiff claims that this conduct was in violation of the Securities Act as defendant, "by means of manipulative, deceptive and fraudulent devices and contrivance, [and] by ... untrue statements of material facts [and omissions of] material facts ..." induced plaintiff to purchase and sell government securities to its detriment. (Amended Complaint, ¶ 25.) In Count II, plaintiff alleges these acts give rise to liability for common law fraud, and in Count III, plaintiff claims defendants, through these actions, breached their fiduciary duty owed to plaintiffs.

In Count IV, plaintiff contends that Landmark, as a "futures commission merchant" (7 U.S.C. § 2), willfully and fraudulently committed acts or omissions in the speculative buying or selling of commodity futures contracts in violation of 7 U.S.C. § 6b of the Commodity Exchange Act. Specifically, plaintiff alleges that between October, 1984 and February, 1985, Tisdale advised plaintiff to purchase 1,930 June 1985 Treasury Bond Contracts. This advice was allegedly given in response to plaintiff's query of how best to minimize its interest rate exposure, yet remain within the guidelines and regulations of the

Federal Home Loan Bank Board. According to plaintiff, Tisdale was aware of plaintiff's concerns, the board's regulations, and the fact that plaintiff would rely totally on his expertise. Nevertheless, it is alleged that at no time did Tisdale, or anyone else from Landmark, explain to plaintiff that the purchase of these contracts was a commitment to "sell short" treasury bonds having a face value of $193 million, or that this exposed plaintiff to a risk of loss in excess of its net worth. Plaintiff further alleges that defendant knew, but did not reveal, that this type of investment did not protect against interest rate risk. Plaintiff contends that such an investment violated the board's policy, and had the board been informed it would have rejected the proposal.

Plaintiff further alleges that on February 27, 1985, defendant Tisdale executed a short sale of 1,930 commodity futures contracts on behalf of plaintiff, with a commission to defendants of $96,500.00. The contracts represented a commitment to sell June 1985 treasury bonds having a face value of $193 million, and this was of sufficient size to manipulate the national market price of the June 1985 futures contracts. On March 1, 1985, plaintiff closed its position in this commodities commitment with a profit of $416,709.60 and a commission to defendants of $97,500.00. Plaintiff contends that by profiting in this short sale, it was lulled into trusting defendant Tisdale's advice.

Thereafter, on March 25, 1985, Mr. Black, via telephone from New York City, authorized a short sale on behalf of plaintiff of 1,950 commodity futures contracts, representing a commitment to sell June 1985 treasury bonds having a face value of $195 million. Plaintiff alleges that it immediately began to accrue losses with respect to these contracts. Despite the volatility of plaintiff's position, defendant Tisdale did not advise Mr. Black to monitor its position or to consider a stop loss order. On June 21, 1985, Mr. Black learned that plaintiff had suffered substantial losses and closed out its remaining futures contracts, resulting in additional commissions being paid to defendants.

In Counts V and VI the plaintiff asserts claims for breach of fiduciary duty and common law fraud, respectively, based on the defendants' misrepresentations and omissions in regard to the commodity futures contracts.

Finally, plaintiff asserts that the defendants engaged in a pattern of racketeering activity through the use and means of wire and mail fraud and securities fraud in the purchase and sale of the securities and financial futures for plaintiff's account, in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (RICO).

Defendants have now renewed their motion to dismiss this action pursuant to 28 U.S.C. § 1406(a) and Fed.R.Civ.P. 12(b)(3) for improper venue, or to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

The defendants argue that the court should first address the propriety of venue in this district as this case can be resolved on that issue alone, thus avoiding the need to address the more difficult question of personal jurisdiction which necessarily involves issues of constitutional law. In *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), the Supreme Court sanctioned the reversal of the normal order of considering personal jurisdiction and venue "when there is a sound prudential justification for doing so." 443 U.S. at 180. The *Leroy* court found that it was prudential to reverse the order of inquiry when resolution of the venue issue resolved the case, and, as such, the more difficult constitutional issues did not have to be addressed. *Id.* at 181. *See also Leech v. First Commodity Exchange Corp. of Boston*, 553 F.Supp. 688 (W.D.Pa.1982).

In the case at bar, resolution of the venue issue will not "resolve" the case as the court finds venue to be properly laid in this district. Therefore, the constitutional issues will need to be addressed, and thus there is no need to reverse the normal order of inquiry.

## I. *Personal Jurisdiction*

Both the Securities Act and RICO contain provisions which authorize nationwide service of process. *See* 15 U.S.C. § 78aa and 18 U.S.C. § 1964(c). Many courts have concluded that when nonresident defendants are served pursuant to these or similar statutes, due process is satisfied if the defendant merely has minimum contacts with the United States. *See, e.g., Clement v. Pehar*, 575 F.Supp. 436, 438 (N.D.Ga.1983). However, this court rejected this approach in its April 14, 1987 order, 657 F.Supp. at 1194, and adopted instead the view that the defendant must have "minimum contacts" in the forum district itself. In so holding, this court relied on *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), in which the Supreme Court observed that "[t]he personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." 456 U.S. at 702–03, 102 S.Ct. at 2104. This court then held:

> [The] line of cases construing and applying *Insurance Corp. of Ireland* makes it clear that the issue of personal jurisdiction over a nonresident defendant (corporate or otherwise), which is properly served under the nationwide service of process statutes, entails a Fifth Amendment due process "minimum contacts" analysis, with consideration given to the following factors: (1) the burden imposed upon defendant by litigation in the forum state; (2) defendant's reasonable expectation and the foreseeability of litigation in the forum state; (3) plaintiff's interest in convenient and effective relief; (4) the federal judicial system's interest in efficiently resolving controversies; and (5) the forum state's interest in having a court, within the forum state, adjudicate the dispute. *GRM v. Equine Inv. and Man. Group*, 596 F.Supp. [307, 315 (S.D.Tex.1984)].

657 F.Supp. at 1194.

The parties here agree that all Texas defendants were properly served under the nationwide service of process statutes. Thus, in determining whether this court's assertion of jurisdiction over them would be fair under the circumstances, the court must evaluate the five factors set forth above, as applied to this case.

### A. *Defendants' Burden*

"Whether asserting personal jurisdiction is fair and substantially just turns in part upon the burden or inconvenience which distant litigation imposes upon the objecting defendant." *GRM*, 596 F.Supp. at 315 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292–94, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980)). The defendants here argue that the burden placed on them in litigating this case in Kansas is much greater than would be the burden on plaintiff if the case were tried in Texas. This is so, defendants argue, because there are five individually named defendants who will be put to the expense of living in Wichita. Moreover, there are no direct flights from Austin to Wichita. Defendants further argue that regardless of where the trial is held, plaintiff will have to travel to Austin in order to discover the pertinent documents.

In this case, defendants have employed both Texas and Kansas counsel; thus, the trial of the lawsuit in Kansas will not be an imposition on defendants' Texas attorney. Further—as defendants have observed—the majority of the "burdens" in this case will occur during discovery rather than during the actual litigation. Thus, in a relative sense, the burdens imposed on the defendants in litigating in Kansas are slight. Moreover, these defendants engaged in deliberate conduct which had a substantial harmful effect on a Kansas resident. In *Pioneer Properties, Inc. v. Martin*, 557 F.Supp. 1354 (D.Kan.1983), the court made the following observations in considering the "hardship" to the defendants in litigating in a distant forum:

> While mindful of the burdens to a party of litigating in a distant forum which is the situs of some but by no means all of the activity giving rise to a lawsuit, the court believes this factor is not decisive

where a nonresident defendant engages in deliberate conduct which has a substantial and foreseeable effect on a resident plaintiff, and where the activity is subject to special regulation. [Citations omitted.] Relative inconveniences would confront either party depending upon where litigation proceeds. [Footnote omitted.]

557 F.Supp. at 1361. Therefore, under the rationale of *Pioneer Properties*, the "burden factor" should not be decisive.

This court must therefore examine whether the remaining four factors support the defendants' motion.

### B. *Defendants' Reasonable Expectations*

This factor focuses on whether the defendants' conduct and connection with the forum state were such that he should have "reasonably anticipate[d] being haled into court there." *World–Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. at 567; *Pedi Bares, Inc. v. P & C Food Markets, Inc.*, 567 F.2d 933, 937 (10th Cir.1977).

In this case, the plaintiff has alleged that the defendants made over 200 telephone calls to plaintiff in Kansas in order to discuss plaintiff's investments. These communications with plaintiff in Kansas were part of a continuous business relationship from which defendants derived considerable economic benefit. Because the mail and telephone contacts were an "integral part of an alleged scheme" to defraud plaintiff, such contacts are relevant in assessing the nature and extent of defendants' conduct in this forum. *Pioneer Properties*, 557 F.Supp. at 1360.

It is also relevant to this inquiry that the defendants are engaging in a highly regulated activity, making it more foreseeable that they might have to litigate in a distant forum. *GRM*, 596 F.Supp. at 317. "It is precisely because of the national character of the securities industry that Congress enacted Section 27 [authorizing nationwide service of process.]" *First Fed. Sav. & Loan v. Oppenheim, Appel. Dixon*, 634 F.Supp. 1341, 1348 n. 9 (S.D.N.Y.1986).

In this case, when the regulated, multi-state nature of defendants' business is considered in conjunction with the defendants' purposeful actions in allegedly defrauding plaintiff, which had its effect in Kansas, the court is persuaded that a reasonable person in the Texas defendants' shoes would have anticipated being haled into court in Kansas. It is of no consequence that defendants were not physically present in Kansas throughout these transactions. *See Green Country Crude, Inc. v. Avant Petroleum, Inc.*, 648 F.Supp. 1443, 1450 (D.Kan.1986) (While lack of physical presence is irrelevant, if defendant's only connection with the forum is due to the unilateral acts of the plaintiff, then there has been no "jurisdictional" contact with the forum state.) In this case, defendants' contacts with plaintiff in Kansas were bilateral acts between broker and client. As stated, the defendants derived considerable economic benefit from these "contacts", and further, they led to foreseeable consequences on plaintiff in Kansas. As such, this court is convinced that defendants should reasonably have expected to be haled into court in Kansas.

### C. *Plaintiff's Interest*

The court must next consider whether litigation of this action in Kansas will further plaintiff's interest in convenient and effective relief. *World–Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S.Ct. at 564. Of special significance under this factor is whether litigating in a particular forum will allow the plaintiff to join all parties in one suit. *See GRM*, 596 F.Supp. 307, 317–18. Here, defendant Iowa Grain has been dismissed; therefore, all remaining parties —the Texas defendants—will be joined in one action whether the case is tried in Kansas or Texas. Obviously, plaintiff will be able to obtain effective relief in either forum. However, plaintiff's choice of forum is Kansas, and this choice is entitled to due regard by this court. *See Grimandi v. Beech Aircraft Corp.*, 512 F.Supp. 764, 777 (D.Kan.1981). As such, the third factor weighs in favor of this court's exercising personal jurisdiction over the Texas defendants.

### D.  *Federal Judicial System's Interest*

The fourth factor—which is very similar to the third—is the "judicial system's" interest in the efficient resolution of controversies. *World–Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S.Ct. at 564; *GRM*, 596 F.Supp. at 318.  In other words, if a single "dispute" can be resolved in one proceeding, the court with jurisdiction over some defendants should exercise jurisdiction over all defendants whenever it can.  As stated, in this case the only remaining defendants are the Texas defendants.  Thus, this particular factor has no bearing on the case at bar and may be disregarded.

### E.  *Kansas' Interest*

The final factor this court must consider is the forum state's interest in adjudicating this particular dispute.  *World–Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S.Ct. at 564; *GRM*, 596 F.Supp. at 318.  Clearly, Kansas does have a strong interest in protecting its residents from fraudulent securities schemes which reach into this state.  This is true, regardless of the fact that the plaintiff in this case happens to be a federally-chartered savings and loan institution.

Further, although the defendants state that the plaintiff's state law claim "will require application of the state laws of Texas," (Memo. of Texas Defs.' in Support of Renewed Motion, p. 16), in this court's view it is unclear whether the laws of Texas or the laws of Kansas should apply. *See* Restatement (Second) Conflict of Laws § 148 comment j.  ("[W]hen the plaintiff acted in reliance upon the defendant's representations in a single state, this state will usually be the state of the applicable law, with respect to most issues, if (a) the defendant's representations were received by the plaintiff in this state, or (b) this state is the state of the plaintiff's domicile or principal place of business. ..")  Under the Restatement's analysis, the law of the State of Kansas would apply.  If so, this Kansas court would have a greater interest in this litigation and would be the more efficient forum.  Accordingly, the final factor weighs in favor of this court's exercising personal jurisdiction over the Texas defendants.

To summarize: the Texas defendants allegedly engaged in deliberate fraudulent conduct which had foreseeable effects on plaintiff in Kansas.  Further, such activity is subject to special, federal regulation. Relative inconveniences would confront either party depending upon where litigation proceeds.  The court has given due consideration to all the factors which deserve weight in determining the reasonableness of the exercise of jurisdiction.  Considering all of these factors as applied to this case, the court finds that the assertion of personal jurisdiction over the Texas defendants is both equitable and consistent with due process principles.

### II.  *Venue*

█ The purpose of the statutory venue provision is "to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–84, 99 S.Ct. 2710, 2716, 61 L.Ed.2d 464 (1979).  Where multiple causes of action are asserted—as in the case at bar—the general rule is that venue must be proper as to each one. *See Payne v. Marketing Showcase, Inc.*, 602 F.Supp. 656 (N.D.Ill.1985); 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3808 at 80 (1986).  However, there are exceptions to this rule which will be discussed.

As stated, defendants contend that venue is improper in Kansas under any of the applicable venue provisions.  In this case, plaintiff has pleaded violations of various federal laws and so this action is not based solely on diversity jurisdiction.  Therefore, the applicable general venue provision is 28 U.S.C. § 1391(b), and it provides as follows:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

The critical language of this section is "except as otherwise provided by law."  Here, the Securities Act and RICO each contain special venue provisions, and so reliance on

the general venue provision is unnecessary. *See Pioneer Properties, Inc. v. Martin,* 557 F.Supp. 1354, 1362.

■ Section 27 of the 1934 Securities Act governs venue of securities actions, and it provides:

> Any criminal proceeding may be brought in the district *wherein any act or transaction constituting the violation occurred.* Any suit or action to enforce any liability or duty created by this title or rules and regulations thereunder, ... may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, ...

15 U.S.C. § 78aa (emphasis added). Thus, venue is proper under this provision in any district where (1) any act or transaction constituting the violation occurred; or (2) where the defendant is found; (3) where the defendant is an inhabitant; or (4) where the defendant transacts business.

The Landmark defendants are not inhabitants of Kansas, nor are they "found" in this state, given that the word "found" as used in the statute means a presence and continuous local activity within the district. *See Payne v. Marketing Showcase, Inc.,* 602 F.Supp. at 659. Thus, in order for venue to be proper under § 78aa, it must be shown either that some act constituting the violation occurred in Kansas or that the defendant "transacts business" in Kansas.

According to plaintiff's allegation in the amended complaint, the defendants utilized the wires and the mail to defraud plaintiff. Plaintiff alleges that Tisdale made over 200 telephone calls to plaintiff in Kansas, wherein Tisdale made misrepresentations or omissions of material facts. In addition, plaintiff alleges that defendants sent numerous letters to plaintiff in Kansas, mailed a contract to Kansas (which plaintiff signed and returned to defendant Iowa Grain in Illinois), and sent securities which plaintiff had purchased to Kansas.

■ It is well settled that a single act committed within the district in furtherance of a scheme to defraud is sufficient to confer venue under the "act or transaction" requirement of § 78aa. The act need not constitute the core of the violation as long as it was more than an immaterial part of the alleged violation. *Lefever v. Vickers,* 613 F.Supp. 352, 353 (D.Colo. 1985); *GRM v. Equine Inv. & Man. Group,* 596 F.Supp. 307 (S.D.Tex.1984); *S–G Securities, Inc. v. Fuqua Investment Co.,* 466 F.Supp. 1114, 1121 (D.Mass.1978). "Courts have generally interpreted this test to require some action by a co-defendant that 'reaches into' the forum district, to obtain investors." *GRM,* 596 F.Supp. at 312 (quoting *Clement v. Pehar,* 575 F.Supp. 436, 441 (N.D.Ga.1983)). It is clear that venue will be sustained in a securities case where a defendant causes false or misleading information to be transmitted into a district, even if the defendant has never been physically present in the district. *See Hooper v. Mountain States Securities Corp.,* 282 F.2d 195, 204 (5th Cir. 1960) ("We think that any use of instrumentalities of the mails or other interstate facilities made within the forum district constituting an important step in the execution of the fraudulent, deceitful scheme or in its consummation is sufficient"); *Clement v. Pehar,* 575 F.Supp. 436, 442 (use of telephone sufficient when defendants used this instrument of interstate communication to transmit allegedly false and misleading representations into this district, even though plaintiff initiated the telephone call); *City of Harrisburg v. Bradford Trust Co.,* 621 F.Supp. 463 (N.D.Pa. 1985); *State Teachers Retirement Board v. Fluor Corp.,* 500 F.Supp. 278 (S.D.N.Y. 1980), *aff'd in part, rev'd in part on other grounds,* 654 F.2d 843 (2d Cir.1981); *Black & Co. v. Nova–Tech, Inc.,* 333 F.Supp. 468, 473 (D.Or.1971); *Stern v. Gobeloff,* 332 F.Supp. 909, at 911 (Md.1971) (found venue lies in both district where the fraudulent communication was transmitted and the district where it was received). *Compare Pratt v. First Calif. Company, Inc.,* 517 F.2d 11 (10th Cir.1975) (plaintiff and defendant met in California and agreed defendant would sell plaintiff's stock; plaintiff, a Utah resident, mailed stock from Utah to defendant in California; in subsequent litigation, court found no venue un-

der § 78aa because the mailing was a unilateral act on the part of plaintiff).

In the instant case, the court must conclude that venue is proper under the broad provisions of the securities laws. Numerous phone calls were made by defendants in Texas to plaintiff in Kansas, in which defendants allegedly made material misrepresentations concerning the securities plaintiff was induced to invest in. These misrepresentations were clearly a material part of the alleged violations of the Securities Act. Thus, under the weight of authority, venue is proper in this district as to Count I.

■ . The plaintiff also asserts a RICO claim, a Commodities Exchange Act claim, and pendent state claims. As previously stated, the general rule is that venue must be proper as to each claim. Venue for the RICO claim may be grounded upon either 18 U.S.C. § 1965(a) or upon 28 U.S.C. § 1391(b). Venue for the Commodities Exchange Act claim, as well as the pendent state claims, must be grounded upon § 1391(b). Section 1965(a) lays venue in the district where the defendant "is found, has an agent or transacts his affairs." Section 1391(b) lays venue in the district in which all defendants reside or in which the claim arose. In this case, it is doubtful, in light of the existing case law, that this court could find either that defendants "transacted their affairs" in Kansas, *see, e.g., Dody v. Brown,* 659 F.Supp. 541 (W.D. Mo.1987), or that the "claim arose" in Kansas. *Id.; Leech v. First Commodity Corp. of Boston,* 553 F.Supp. 688 (W.D.Pa.1982). However, some courts decline to strictly apply the rule that venue must be proper as to each claim where the claims amount to one cause of action with separate grounds for relief. In such cases, courts may find that proper venue as to the principal claim will support adjudication on all claims. *Kramer v. Pittstown Point Landings, Ltd.,* 637 F.Supp. 201 (N.D.Ill.1986); *City of Harrisburg v. Bradford Trust Co.,* 621 F.Supp. at 463, 468. While most courts which apply the exception do so when only pendent state claims remain, the exception also applies to remaining federal claims.

For instance, in *Beattie v. United States,* 756 F.2d 91, 100 (D.C.Cir.1984), the court stated:

> The general rule is that venue must be established as to each separate cause of action. [Footnote omitted.] However, as one commentator has explained, the focus is on the word *separate.* [Footnote omitted.] Professor Moore notes that, whether the case involves a federal and nonfederal claim [footnote omitted], or two federal claims [footnote omitted], *if they amount to only one cause of action* with two grounds for relief, proper venue as to one federal ground will support adjudication of both grounds. His theory is that "there is no true problem of joinder of actions unless there be two or more causes of action; that a broad concept of cause of action eliminates or lessens the problem."

(Emphasis in original) (quoting 1 J. Moore, Moore's Federal Practice ¶ 0.142[3] (2d ed. 1984)).

More recently, Professor Moore has stated:

> Where there are two or more federal grounds and venue is properly laid as to one ground, this venue will support adjudication of the other related ground or grounds. [Footnote omitted.]

> The governing principles in the above situations have been stated by Judge Kaufman in this manner: "Where the court is properly vested with one cause of action embodying the principal or fundamental controversy between the parties the court may justifiably retain jurisdiction over ancillary or related issues."

J. Moore, Moore's Federal Practice ¶ 0.140[5] (2d ed. 1986) (quoting *Bradford Novelty Co. v. Manheim,* 156 F.Supp. 489, 491–92 (S.D.N.Y.1957)). *See also Ferguson v. Ford Motor Co.,* 77 F.Supp. 425, 436 (S.D.N.Y.1948). In two recent cases from the Northern District of Illinois, the court has asserted venue over a RICO claim because it arose out of the same set of operative facts as the Securities Act claim to which venue was properly laid in that district. *Firemen's Annuity & Benefit Fund of Chicago v. Union Planters National*

*Bank,* No. 87–C–106 (N.D.Ill. June 1, 1987) [Available on WESTLAW, 1987 WL 4990]; *Telman v. Captain Crab, Inc.,* No. 85–C–6584 (N.D.Ill. Dec. 3, 1986) [Available on WESTLAW, 1986 WL 13722]. This concept has also been termed "pendent venue". *See Beattie,* 756 F.2d at 101–03.

In this case, all the claims asserted against the Texas defendants arise out of the same set of operative facts as the Securities Act claim. Although the Commodity Exchange Act and RICO claims deal with plaintiff's investments in commodities futures and the Securities Act claim deals with plaintiff's investments in securities, all claims arise from the defendants' alleged fraudulent handling of plaintiff's account. Moreover, the litigants and witnesses will be the same as to all claims. The court thus concludes that the claims arise out of the same set of operative facts, and that the securities fraud claim is here the "principal" claim. Therefore, because venue is properly laid in this district as to the Securities Act claim, this court also finds venue proper in this district as to the remaining claims.

### III. *RICO*

The defendants have renewed their motion to dismiss the RICO claim pursuant to Rule 12(b)(6), arguing that plaintiff has again failed to state a claim for which relief can be granted. Defendants first argue that plaintiff has failed to state a claim in that it failed to specify which of the four sections of the RICO statute (18 U.S.C. § 1962(a)–(d)) has been violated.

While it is true that the amended complaint fails to specify a particular section, the court would be unwilling to dismiss on this oversight alone. Therefore, if the RICO claim in the amended complaint satisfies one of the subsections, it will not be dismissed.

If the plaintiff is attempting to allege a violation of § 1962(c), the claim must be dismissed because the plaintiff has alleged that *all Texas defendants* acted unlawfully. Pursuant to § 1962(c), the "person(s)" must be separate and distinct from the "enterprise". "The section does not relate to corporate or enterprise liability." *Gar-*

*bade v. Great Divide Mining & Milling Corp.,* 831 F.2d 212, 213 (10th Cir.1987) (citing *Schofield v. First Commodity Corp.,* 793 F.2d 28 (1st Cir.1986)). Thus, by naming all parties as defendants, the plaintiff has failed to state a claim for violation of § 1962(c). However, § 1965(a) does not require a relationship between the "person" and the "enterprise", and so the RICO defendants and the RICO enterprise may be one and the same. *Schofield,* 793 F.2d at 31. Section 1965(a) makes it unlawful for any "person who has received any income derived ... from a pattern of racketeering activity ... to use or invest ... any part of such income ... in ... the ... operation of, any enterprise...." The amended complaint, in ¶ 48, states that the individual defendants control and "operate" the enterprises for their (all defendants) mutual benefit and profits. Thus, the complaint seems to track the language of subsection (a).

The defendants next argue that the claim must be dismissed because the plaintiff failed to use the word "pattern" in its complaint or to satisfy the pattern requirement. The defendants are in error in stating that the plaintiff failed to use the word "pattern". In ¶ 3 of the amended complaint, the plaintiff states "the defendants engaged in a *pattern* of racketeering activity...." (Emphasis added.) This paragraph is incorporated into the RICO count itself. Moreover, the RICO count does contain allegations sufficient to satisfy the "pattern" requirement.

In *NL Industries, Inc. v. Gulf & Western Industries,* 650 F.Supp. 1115, 1127 (D.Kan.1986), this court adopted the following definition of "pattern":

In ... footnote 14 of *Sedima SPRL v. Imrex Co.,* 473 U.S. [479, 496], 105 S.Ct. 3275 [3285], 87 L.Ed.2d 346, 358 (1985), the court stated: "Proof of two acts of racketeering activity, without more, does not establish a pattern. ... The target of [RICO] is ... not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuity to be effective. It is this factor of

*continuity plus relationship* which combines to produce a pattern." ... The alleged predicate acts herein are clearly "related". To be "continuous," more than sporadic or isolated activity must be alleged. In *AgriStor Leasing v. Meuli*, 634 F.Supp. 1208 (D.Kan.1986), this court held that in order to be "continuous," the "predicate acts must have taken place *in the course of different criminal episodes of fraudulent schemes.*" Whether the predicate acts are sufficiently continuous within the meaning of *Sedima* depends on such factors as the number of predicate acts, their duration, the nature of the scheme they are designed to promote, the actual or potential number of victims, the nature of the scheme's objectives, the number of participants in this scheme, the potential for continued criminal activity, and whether the particular scheme is part of a broader set of criminal objectives. In the case at bar, the alleged commercial bribery, and any fraudulent use of the mails or wires or airlines arose from a single episode—the attempt to obtain a contract from NL in November 1981 to purchase air pressure vessels. This is not sufficiently continuous to constitute a "pattern" as this court has interpreted that term for purposes of a RICO violation.

In the case at bar, all of the defendants' allegedly illegal activity was related and was part of a single scheme—i.e., the scheme to defraud plaintiff Wichita Federal Savings and Loan in its equity investments. However, this was an open-ended, ongoing scheme, comprised of many "episodes", and, as such, there was at least a threat of continuity.

The Tenth Circuit has yet to "formulate a bright-line test" for determining the existence of a "pattern". *Torwest DBC, Inc., v. Dick*, 810 F.2d 925, 929 (10th Cir.1987). In *Torwest*, it found what was *not* a pattern: a single fraudulent scheme that has a definite purpose, the completion of which will end the scheme. In reaching this decision, the Tenth Circuit contrasted the type of scheme involved in this case, stating:

> A more difficult question is presented when the RICO claim is based on one scheme involving one victim, but the plan contemplates open-ended fraudulent activity and does not have a single goal that, when achieved, will bring the activity to an end. Some courts have found that such an ongoing scheme is itself sufficient to satisfy the continuity element of a RICO pattern. See, e.g., *Morgan v. Bank of Waukegan*, 804 F.2d 970, 976 (7th Cir.1986); see also *Illinois Dept. of Revenue v. Phillips*, 771 F.2d 312 (7th Cir.1985). Other courts may require additional *proof* showing that the defendants have engaged in similar activity in the past, or have been involved in other criminal activity, or pose a threat of similar activity in the future. See, e.g., *Superior Oil Co. [v. Fulmer*, 785 F.2d 252, 257 (8th Cir.1986) ].

810 F.2d 929.

It appears from this discussion that the Tenth Circuit will likely hold that alleging an "open-ended fraudulent scheme" will be sufficient, at least at the pleading stage, to satisfy the "continuity" requirement. While "proof" of other criminal activity involving other victims may be preferable —and even required—this is simply not a matter for pleading. Therefore, because the plaintiff has alleged that defendants' criminal acts were part of a continuous scheme, the court finds that the allegations in the amended complaint satisfy the "pattern" requirement.

The defendants also argue that the plaintiff has failed to plead the mail, wire and securities fraud "predicate acts" with sufficient particularity to satisfy the requirements of Rule 9(b). However, the court finds that when the amended complaint is taken as a whole, there is sufficient detail as to "who, what, when, and where" to satisfy Rule 9(b) and to enable the defendants to structure a defense.

Accordingly, defendants' motion to dismiss the RICO count will be denied.

IT IS ACCORDINGLY ORDERED this 24 day of November, 1987, that the Texas defendants' motion to dismiss for improper venue pursuant to Rule 12(b)(3), or for lack of jurisdiction pursuant to Rule 12(b)(2), is

denied. It is further ordered that defendants' motion to dismiss Count VII pursuant to Rule 12(b)(6) is denied.